[No. B005670. Second Dist., Div. Two. Jan. 22, 1985.]

ALMA T. WILSON, Plaintiff and Respondent, v.
PHILIP T. JEFFERSON, Defendant and Appellant.

**COUNSEL**

Philip T. Jefferson, in pro. per., for Defendant and Appellant.

Ralph R. Benson for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—The appeal is from a default judgment for $50,000 in general damages and $80,000 in punitive damages against appellant Philip T. Jefferson and in favor of respondent Alma T. Wilson, based upon respondent's complaint which asserted that appellant, an attorney, committed malpractice in negligently and fraudulently failing within the applicable period of limitation to initiate proceedings incident to respondent's cause of action for personal injuries sustained by her in October 1979.

 The question presented for our resolution, simply stated, is whether the trial court under the circumstances present properly determined to strike appellant's answer to the complaint and to enter his default pursuant to Code of Civil Procedure section 2034, subdivision (b)(2)(C),[1] thereby supplying the prerequisites to the ensuing default judgment.

We are satisfied the sanction imposed was excessive and accordingly reverse. The following further facts either as alleged or established in the record, provide the foundation for our conclusion.

---

[1]We here set out all pertinent portions of the statute, in anticipation of subsequent references thereto in the opinion.

"(a) . . . Upon the refusal or failure of a party to answer any interrogatory submitted under Section 2030, the proponent of the question may on . . . notice make . . . application for . . . an order [compelling an answer] . . . . Upon the refusal or failure of a party to identify documents, papers, books, accounts, letters, photographs, objects, or tangible things or to permit inspection or entry after having been served with a request under Section 2031, the party serving the request may on like notice and upon a showing of good cause make application for an order to compel compliance with the request. . . .

"(b)(1) The court may punish as a contempt . . . (iii) the refusal of any person to obey any order made by the court under subdivision (a).

"(2) If any party . . . refuses to obey an order made under subdivision (a), or if any party . . . refuses to obey an order made under Section 2019, 2031 or 2032, the court may make any orders in regard to the refusal which are just, including, but not limited to, any of the following:

"(A) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental or blood condition of the person sought to be examined, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of the physical or mental or blood condition of the person sought to be examined.

"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

"(D) An order requiring the disobedient party or the attorney advising such disobedience to pay to the party obtaining an order under this section the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees.

"(E) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental or blood examination.

"'. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .'"

On October 7, 1979, respondent, then age 53, was playing bingo at a local community center when a temporary partition installed in connection with the center's refurbishing fell on top of her, causing injuries which later occasioned at least $18,000 in hospital and doctors' expenses. Ten days after the incident and in consequence of it, respondent retained appellant under a written agreement which in part specified that "all costs and filing fees [would] be paid by respondent." When more than a year elapsed and respondent was advised any claim she might have had against the center had expired for failure of appellant to bring suit thereon, she filed the above mentioned complaint against appellant, for "malpractice, fraud and intentional infliction of emotional distress," in which she alleged in pertinent part: "4. That on or about October 17, 1979 defendant, PHILIP T. JEFFERSON, was retained by plaintiff to represent her in a personal injury suit for damages and injuries sustained on or about October 7, 1979. The contract was written and signed in Los Angeles, California.

"5. Defendants assured plaintiff many times that they were proceeding with her case and when plaintiff offered to help she was told there was nothing for her to do.

"6. It was not until early December, 1980, that plaintiff was told the statute of limitations had run October 7, 1980. Defendant said he had not filed plaintiff's case because plaintiff had not advanced him the $75.00 filing fee. This was the first time plaintiff was notified of such a requirement.

"7. Defendants, in fact, did not file a lawsuit within the (1) year as required by California (Statute of Limitations). Representations to plaintiff by defendants that they were working on her case were intentional misrepresentations known to be false in order to have plaintiff rely on them to her detriment and a breach of contract to file her case in court to her deteriment, costing her a possible award of $50,000.00 and warranting punitive damages of $1,000,000.00.

"8. As a direct and proximate result of such conduct of defendants and each of them, plaintiff has sustained substantial compensable losses, and has suffered physical, mental and severe emotional distress and discomfort, all to her detriment in the sum of $100,000.00."

Appellant's answer to the complaint, after denials pursuant to Code of Civil Procedure section 431.30, interposed the affirmative defense that "Plaintiff is barred from recovery herein by reason of the fact that pursuant to a written agreement the plaintiff Alma Wilson agreed to pay court costs including filing fees to file a complaint against potential defendants and

plaintiff Alma Wilson never paid such filing fees or court costs or made arrangements to pay same.

"That approximately 90 days before the statute of limitations ran on her civil claim she received a written reminder in letter form that unless she paid the court costs including filing fees no lawsuit would be filed. Thereafter, plaintiff, ALMA WILSON never paid the filing fees or court costs or made arrangements to pay same. Plaintiff ALMA WILSON failed and refused to pay such filing fees and or such court costs."

The correspondence referred to consisted of a form letter which advised that "The statute of Limitations will run on this accident case on October 7, 1980. This means that if we have not filed a lawsuit for you, *prior to that date,* we will be barred from doing so in the future. It is, therefore, very important that Civil Action be initiated at the earliest possible date. [¶] In order for us to file this lawsuit for you, it will be necessary for you to come into the office at your earliest convenience and bring $75.00 for filing fees and court costs."

At the time the letter was claimed to have been sent, viz., July 8, 1980, the appropriate filing fee in fact was $51, the $75 cost specified in the letter not being imposed until January of 1981. Recognizing the discrepancy, and surmising the letter had been prepared at a later date than indicated, respondent's new counsel propounded interrogatories to appellant in which he requested a specification of personal injury actions appellant had filed during the period October 17, 1979 to January 1, 1981, and a description of appellant's office procedure designed to ensure timely filings. Appellant initially failed to supply answers to those interrogatories, but, after a court order was issued that he do so, he identified six such actions, and respecting the office procedure replied that: "A file is set up and three dates are placed in the office calendar book. 1 date is approximately 3 months before the statute runs, and a letter is mailed to client to remind them of the statute date. Next date in the calendar book is approximate 3 weeks before the statute runs to again check with the client regarding filing of the lawsuit and payment of costs and filing fees. 3rd date is placed in the calendar book a date before the statute runs as a final determination as to whether or not the client had paid the filing fees and court costs so lawsuit can be filed."

Based on these responses, respondent's counsel then directed to appellant a request for production of documents pursuant to Code of Civil Procedure section 2031[2] wherein he sought:

---

[2]"Any party may serve on any other party a request (1) to identify such documents, papers, books, accounts, letters, photographs, objects or tangible things, of a category specified with reasonable particularity in the request, which are relevant to the subject matter of

"1. Your office calendar for the years 1979 and 1980 . . .;

"2. Your complete files for the . . . cases [identified by appellant];

"3. Copies of all form letters in use in your office during the years 1979 and 1980 . . . ."

When appellant again failed to supply the items requested, respondent brought a motion to compel production pursuant to Code of Civil Procedure section 2034, subdivision (a). (See fn. 1.) In support of the motion it was asserted that "Jefferson's calendar book for the two years specified will show the method for calendaring the WILSON case, if any claimed method was used." It was further asserted that production of the case files would reveal whether there were any letters similar to the one appellant claimed to have sent respondent and whether any of the other named clients prepaid fees, and that production of the form letters would show whether there was a form letter for fees or whether the letter dated July 8, 1980, was created only for this particular case.

Appellant resisted the motion, contending: "That the request for the production of documents by plaintiff are either clearly privileged or 'a mere fishing bill' [*sic*].

"That plaintiff is requesting an order compelling production of documents has failed to make a showing of good cause that contains a factually detailed statement showing the criteria of good cause.

"That plaintiff has no right to inspect files of none [*sic*] party clients in violation of the attorney client privilege, work product, right of privacy and constitutional immunity against unlawful searches . . ."

■■■■■ The trial court, taking the objections into account, granted the motion but limited the order in the fashion: "Motion granted as follows: item 1, provided however, [appellant] may delete names of persons for whom [appellant] did not appear as attorney of record. Item 2, limited to records of payments of costs by [appellant] and payments to [appellant]

---

the action, or are reasonably calculated to discover admissible evidence relating to any matters within the scope of the examination permitted by subdivision (b) of Section 2016 of this code and which are in the possession, custody, or control of the party upon whom the request is served, and to produce and permit the inspection and copying or photographing of the same by or on behalf of the party making the request; . . .

"(b) . . . The party submitting the request may move for an order for compliance under subdivision (a) of Section 2034 with respect to any objection to or failure to respond to the request or any part thereof, or to any failure to permit inspection as requested. . . ."

by clients on account of costs. Item 3, limited to forms used before case filed . . . ."[3]

Appellant did not comply with the order. As a result, respondent brought a further motion to strike appellant's answer and to enter his default. Appellant neither opposed the motion nor did he-appear at the hearing on it. The trial court thereafter ruled that: "Motion is granted, answer is stricken, defendant's default is entered for wilfull [sic] disobedience to prior order. Defendant has shown continuing history of flaunting discovery requirements." The default judgment appealed from followed.

From the foregoing recitation, we think it was fairly to be inferred by the trial court that appellant's obstinate failure to cooperate in the discovery process was both calculated and indicative of the fact his form letter defense was without merit, such that he clearly was subject to one or more of the consequences contemplated by Code of Civil Procedure section 2034, subdivision (b). (See fn. 1.) The question remains, however, whether, in spite of appellant's recalcitrance, the ultimate sanction of entirely precluding him from any further participation in the case was appropriate. ■ As we have indicated, we think that question must be answered in the negative, based on principles which this court approved in *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771 [149 Cal.Rptr. 499]. So, while we there accepted the proposition that "there is no question that a court is empowered to apply the ultimate sanction [of a default judgment] against a litigant who persists in the outright refusal to comply with his discovery obligations [because] the refusal to reveal material evidence is deemed to be an admission that [his] . . . defense is without merit," we also adopted the fundamental precept that, "The penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery [so that a] sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause." (*Id.,* at p. 793.)

■ Here, appellant systematically sought to avoid meaningful inquiry into the bona fides of the affirmative defense asserted in his answer and through a thinly veiled and misconceived ploy attempted, apparently, to forestall discovery by respondent that that defense was specious. His conduct, however, related only to that affirmative defense and was not neces-

---

[3]As part of his contention the trial court committed reversible error herein, appellant repeats his claim the items sought to be discovered were both privileged and constituted work product. It is enough to say the claim cannot be supported. (See *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277 [169 Cal.Rptr. 301]; Code Civ. Proc., section 2016, subds. (b) and (g).)

sarily referable to and certainly not dispositive of other issues present in the cause, such as fraud and the question of punitive damages, which, while they were not yet a focal subject of discovery, were manifestly part and parcel of the default judgment.

Accordingly, to entirely exclude appellant from the litigation based on his dereliction not only went beyond what was necessary to protect respondent's interests vis-à-vis her discovery efforts, but unjustifiably precluded him from any defense respecting aspects of the case which only inadequately were connected to that dereliction.

The judgment appealed from is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Compton, J., and Gates, J., concurred.