[Civ. No. 24780. Third Dist. Aug. 29, 1985.]

PURITAN INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF YOLO COUNTY, Respondent;
TRI-C MACHINE CORPORATION, Real Party in Interest.

**COUNSEL**

Cummins & White, Larry M. Arnold, Rick L. Raynsford and Moira Kristof
Hummer for Petitioner.

No appearance for Respondent.

Shepard & Haven, Kenneth B. Shepard and John Studarus for Real Party in Interest.

## OPINION

**SIMS, J.**—In this case we consider what discovery sanctions are appropriate where a party's expert inadvertently loses an object of real evidence crucial to the litigation before an opposing party has had a chance to inspect or test the object. We conclude the party whose expert lost the object is properly precluded from introducing at trial expert testimony based on an examination of the lost object. However, authentic photographs of the object that are available to all parties, and expert testimony based exclusively on an examination of the photographs, should not be excluded from trial as a discovery sanction.

### FACTUAL AND PROCEDURAL BACKGROUND

The missing object is a conveyor belt drive shaft used at Warm Springs Dam near Geyserville, California. The shaft failed on April 23, 1981. Five months prior to its failure the shaft had been repaired by Tri-C Machine Corporation (Tri-C).

Puritan Insurance Company (Puritan) issued a policy of insurance to its insureds Gordon H. Ball, Inc., Auburn Constructors, and Dillingham Corporation which covered, among other things, loss or damage to property including the conveyor belt system of which the drive shaft was a part. Pursuant to this insurance policy Puritan was obligated to indemnify its insureds against losses caused by the drive shaft failure. Puritan did so and obtained an assignment of rights. In the underlying action against Tri-C,[1] Puritan claims Tri-C's repairs to the shaft were defective.

Sometime following the shaft failure Puritan had the shaft tested by its expert Robert Lewis Ray, Inc. (Ray). The shaft had also been tested and photographed by Anamet Laboratories at the request of Puritan's insured Gordon Ball, Inc.[2]

In November of 1983 Puritan's counsel arranged with counsel for Tri-C and its insurer, Mission Insurance Company, to make the shaft available to

[1]Puritan Ins. Co. v. Tri-C Machine Corp., Yolo County Superior Court No. 50000.
[2]Gordon Ball, Inc. is not a party to this action; Puritan stands in Ball's shoes.

Tri-C presumably for its own testing. Puritan informed Tri-C the shaft was still in the possession of Ray. However, despite several searches, Ray was unable to locate the shaft and so informed Tri-C in his response to request for production.

On October 17, 1984, Tri-C brought a motion in the trial court to compel production of the failed shaft. (See Code Civ. Proc., §§ 2031; 2034, subd. (a).)[3] On November 5, 1984, the trial court granted the motion to compel production, opining that "the failure to preserve the key evidence for inspection is at best gross negligence on the part of [Puritan] and/or its representatives." The court found the failure to produce was without substantial justification. (§ 2034, subd. (a).)

Following the motion Ray made another unsuccessful attempt to locate the failed shaft. On November 27, 1984, Tri-C noticed a motion for sanctions for Puritan's continued failure to produce the shaft. Tri-C sought "an order refusing to allow [Puritan] to support or oppose designated claims or defenses, or prohibiting it from introducing in evidence the designated samples or items of testimony, or from introducing any evidence derived from the alleged testing of said samples." The latter clause apparently referred to photographs of the shaft taken in the process of testing. In the alternative Tri-C sought as sanction dismissal of the action.

On December 17, 1984, the court granted Tri-C's motion for sanctions. The court ordered "that [Puritan] is prohibited from introducing in evidence those portions of the subject shaft, or any photographs thereof, tested, examined, analyzed and disposed of . . . and is further prohibited from introducing any evidence or testimony, expert opinion or otherwise, derived from testing, examining or analyzing the portions of the shaft or any photographs thereof."

Contending the sanctions are unlawful, Puritan petitioned this court for a writ of mandate, and, on February 7, 1985, we issued an alternative writ of mandate. (§§ 1084, 1087.)

### DISCUSSION

■ The trial court's order precluded Puritan from introducing two categories of evidence: (1) the failed shaft, and expert testimony derived from examination of the shaft; and (2) photographs of the shaft, and expert testimony derived from examination of the photographs. As to both categories of evidence Puritan contends respondent court's order was excessive and an

---

[3]Statutory references are to the Code of Civil Procedure unless otherwise indicated.

abuse of the discretion afforded trial courts by the civil discovery act (§ 2016 et seq.; see § 2034, subd. (b)(2)). To consider Puritan's contention we turn first to the terms of the relevant statutes.

■ We very recently observed that "Section 2034 provides 'the exclusive mechanics for imposing sanctions for failure to comply with valid requests for discovery.' [Citations.]" (*Trail* v. *Cornwell* (1984) 161 Cal.App.3d 477, 485-486 [207 Cal.Rptr. 679].) Section 2034, subdivision (a), provides in pertinent part that "Upon the refusal or failure of a party to identify documents, papers, books, accounts, letters, photographs, objects, or tangible things or to permit inspection . . . after having been served with a request under Section 2031, the party serving the request may on . . . notice and upon a showing of good cause make application for an order to compel compliance with the request . . . ." (§ 2034, subd. (a).) The section goes on to provide, in subdivision (b)(2), that "If any party . . . or an . . . agent[4] . . . of that party . . . refuses to obey an order made under subdivision (a) . . . the court may make any orders in regard to the refusal which are just, including, but not limited to, any of the following: . . . (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, . . ."

■ We first consider whether a party "refuses" to obey a discovery order, within the meaning of subdivision (b)(2) of section 2034, when it fails to produce evidence that has previously been lost. The meaning of the term "refuses" in section 2034, subdivision (b)(2), is unclear in light of the statute's use of "refusal or failure" in subdivision (a) and its use of "willfully fails" in subdivision (d). It is uncertain whether "refuses" as used in subdivision (b)(2) connotes *any* failure to obey a discovery order or only a *wilful* failure to do so. ■ ■ ■ ■ We have found no authoritative California case resolving the issue; therefore, we turn to cases interpreting analogous provisions of the Federal Rules of Civil Procedure.[5]

---

[4]Puritan does not dispute that its expert witness, Ray, is properly treated as its "agent" for purposes of section 2034, subdivision (b)(2). To hold otherwise would allow parties to circumvent the statute by transferring evidence to third parties. (See *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172, 175 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71] [property in possession of party's attorney].)

[5]"Code of Civil Procedure section 2034 and its related sections were proposed to the Legislature for the purpose of adopting the Federal Rules of Civil Procedure and for the express purpose of broadening the preexisting California rules to the end that they would be comparable with those proceedings in the federal courts. [Citation.] 'These statutes are, in substance, exact counterparts of the federal rules. Therefore, the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts [citations].'" (*Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 384 [137 Cal.Rptr. 332]; Witkin, Cal. Evidence (1966) Discovery and Production of Evidence, § 944, p. 885.)

The counterpart to section 2034, subdivision (b)(2), is found in rule 37, subdivision (b)(2), of the Federal Rules of Civil Procedure. Prior to its amendment in 1970, that subdivision provided in pertinent part that "If any party . . . refuses to obey an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing . . . the court may make such orders in regard to the refusal as are just. . . ." (See *Societe Internationale* v. *Rogers* (1958) 357 U.S. 197 [2 L.Ed.2d 1255, 78 S.Ct. 1087].) In *Societe Internationale* the United States Supreme Court authoritatively construed the term "refuses" in rule 37 to mean that a party "refuses to obey" simply by failing to comply with an order. (P. 208 [2 L.Ed.2d at p. 1265].) The high court explained, "Whatever its reasons, petitioner did not comply with the [discovery] order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply." (*Ibid.;* see Thompson, *Sanctions in California Civil Discovery* (1968) 8 Santa Clara Law. 173, 176-181.)[6]

California cases have assumed, without extensive discussion, that mere noncompliance is all that was required to impose sanctions under section 2034, subdivision (b)(2). (See *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 791-792 and fn. 25 [149 Cal.Rptr. 499]; *A & M Records, Inc.* v. *Heilman* (1977) 75 Cal.App.3d 554, 565 [142 Cal.Rptr. 390].) However, we have found one case which holds a wilful failure is required to impose sanctions under subdivision (b)(2). In *Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482 [202 Cal.Rptr. 227] the court, discussing the range of sanctions available under subdivision (b)(2), stated that "To justify imposition of such discovery sanctions, the trial court must expressly find that the disobedient party's failure to obey was wilful." (P. 489.) However, the only authorities cited for the court's proposition were three cases

---

[6]In 1970, rule 37 was amended to substitute "failure" for "refusal" throughout the rule. The reasons for the amendment are described in the notes of the advisory committee on rules as follows: "Rule 37 sometimes refers to a 'failure' to afford discovery and at other times to a 'refusal' to do so. Taking note of this dual terminology, courts have imported into 'refusal' a requirement of 'willfulness.' See *Roth* v. *Paramount Pictures Corp.,* 8 F.R.D. 31 (W.D.Pa. 1948); *Campbell* v. *Johnson,* 101 F.Supp. 705, 707 (S.D.N.Y. 1951). In *Societe Internationale* v. *Rogers,* 357 U.S. 197 (1958), the Supreme Court concluded that the rather random use of these two terms in rule 37 showed no design to use them with consistently distinctive meanings, that 'refused' in rule 37(b)(2) meant simply a failure to comply, and that willfulness was relevant only to the selection of sanctions, if any, to be imposed. Nevertheless, after the decision in *Societe,* the court in *Hinson* v. *Michigan Mutual Liability Co.,* 275 F.2d 537 (5th Cir. 1960) once again ruled that 'refusal' required wilfulness. Substitution of 'failure' for 'refusal' throughout rule 37 should eliminate this confusion and bring the rule into harmony with the *Societe Internationale* decision. See Rosenberg, supra, 58 Col.L.Rev. 480, 489-490 (1958)." Since the amendment was designed simply to make the rule conform to what the Supreme Court said it meant, we see no reason to reject the court's interpretation of "refuses" in rule 37 prior to its amendment.

interpreting section 2034, subdivision (d), which by its own terms is limited to cases of wilful failure to comply. (See *Weinkauf* v. *Superior Court* (1966) 64 Cal.2d 662, 664 [51 Cal.Rptr. 100, 414 P.2d 36]; *Cornwall* v. *Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250, 252-253 [135 Cal.Rptr. 761]; *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 118-119 [54 Cal.Rptr. 721].) None of these authorities suggests a wilfulness requirement for violations of subdivision (b)(2). Moreover, *Motown* merely states its conclusion without analysis. We believe the better interpretation, which we choose to follow, is that stated by the United States Supreme Court in *Societe Internationale*. (See 14 Grossman & Van Alstyne, Cal. Practice (1972) § 876, pp. 387-389.) ▪ We thus treat Puritan's failure to produce the previously lost shaft as a "refusal" to do so within the meaning of section 2034, subdivision (b)(2).

We next consider whether the trial court's order constitutes an abuse of discretion. ▪ Provided the sanction is authorized by statute, the choice and award of discovery sanctions is a matter within the trial court's discretion. (*Karz* v. *Karl* (1982) 137 Cal.App.3d 637, 648 [187 Cal.Rptr. 183]; *Scherrer* v. *Plaza Marina Coml. Corp.* (1971) 16 Cal.App.3d 520, 524 [94 Cal.Rptr. 85]; Cal. Civil Discovery Practice (Cont.Ed. Bar 1975) § 3.33, p. 121.) There are, however, limitations on the trial court's exercise of its discretion.

The most important and oft-repeated limitation on the trial court's discretion is that it must make such orders as are just. (§ 2034, subd. (b)(2).) "The penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery. Where a motion to compel has previously been granted, the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause." (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793; see *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958 [210 Cal.Rptr. 464]; *Stein* v. *Hassen* (1973) 34 Cal.App.3d 294, 301-303 [109 Cal.Rptr. 321].)

The trial court's discretion to impose the ultimate sanction of default or dismissal is further limited. ▪ A discovery order, though not in the form of a default or dismissal, is justifiably treated as such where the effect of the order is to preclude proof of essential elements of each cause of action. (*Karz* v. *Karl, supra,* 137 Cal.App.3d at p. 648.) ▪ In this case the trial court's order precluded Puritan from admitting any evidence of the shaft, including the photographs which had been taken and which were still in existence. Without any of this proof Puritan would be virtually unable to establish that the shaft's failure was caused by Tri-C's faulty

repairs. The trial court's order therefore effectively imposed a sanction of dismissal. (*Ibid.*)

■ The sanction of dismissal or the rendition of a default judgment against the disobedient party is ordinarily a drastic measure which should be employed with caution. (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.) The sanction of dismissal, where properly employed, is justified on the theory the party's refusal to reveal material evidence tacitly admits his claim or defense is without merit. (*Ibid.; Kahn* v. *Kahn, supra,* 68 Cal.App.3d at p. 382.)

■ The present case does not fit within the dismissal sanction's rationale. The expert witness' negligent loss of the shaft simply does not justify an inference that Puritan's case is without merit. As the trial court implicitly recognized, this is a case of inability rather than wilful or bad faith refusal to comply with a discovery order. We conclude a sanction functionally equivalent to dismissal is not justified on this record. The trial court abused its discretion in imposing its severe discovery sanctions. (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 794, and cases cited; see 2 Hogan, Modern Cal. Discovery (3d ed. 1981) § 14.04, pp. 485-487.)[7]

Although we have equated the trial court's sanction with one of dismissal for the purpose of evaluating its severity we recognize the sanction actually prohibits introduction of evidence and testimony. The prohibited matter may be classified into two categories, (1) the shaft itself or pieces of it, and expert testimony therefrom derived; and (2) photographs of the shaft, and expert testimony derived therefrom. We consider the propriety of sanctions as to each category.

Since the shaft remains lost at this time, the order excluding it from evidence is currently academic. Should the shaft be relocated in time to permit reasonable expert examination by Tri-C, the entire discovery dispute will be rendered academic and presumably the trial court will vacate its sanction order. We therefore proceed on the assumption the shaft will remain lost.[8] Of immediate concern is the trial court's order excluding expert testimony based on an examination of the shaft itself.

It is undisputed that Puritan's expert had completed his examination of the shaft by the time it was lost. That loss precluded Tri-C's experts from

---

[7]In light of our conclusion we need not reach Puritan's contention that a dismissal sanction in this case would violate the federal guarantee of due process.

[8]However, we shall leave the order excluding the shaft in place to preclude the unlikely possibility that Puritan would later discover the shaft and attempt to admit it in evidence without having afforded Tri-C a reasonable opportunity for inspection.

making their own examination of the shaft and reaching their own conclusion as to the cause of its failure. Due to the loss, then, Puritan stood to enjoy an unwarranted advantage in establishing its case. To the extent the trial court's sanction order merely prohibited Puritan from exploiting that advantage, i.e., to the extent it prohibited testimony derived from inspection of the shaft, it was entirely proper. To that extent the sanction was "appropriate to the dereliction" because it served to remove the tactical advantage the loss had created and place the parties on a more equal footing. (See *Wilson* v. *Jefferson, supra,* 163 Cal.App.3d at p. 958; *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.) The discovery sanction did not "exceed that which is required to protect the interests of the party entitled to but denied discovery." (*Ibid.*) We conclude the trial court properly excluded Puritan's expert testimony based on examination or testing of the shaft itself.[9]

We must reach an opposite conclusion with respect to the photographs and expert testimony interpreting them, however. The same authorities which justify the first part of respondent court's order persuade us the second part of the order was an abuse of discretion.

Preliminarily, we note Tri-C does not contend the photographs were unauthentic. Although we do not have the photographs themselves, so far as the record before us discloses, the photographs apparently accurately depict the lost shaft or portions of it. The photographs may therefore constitute relevant evidence of the condition of the shaft at issue. It must be recalled that the photographs of the shaft were never lost or misplaced and, so far as the record indicates, were not beyond the range of Tri-C's discovery. Presumably Tri-C has access to the photographs and is fully able to obtain expert witnesses to interpret them, if that is possible.

We find respondent court's blanket exclusion of the photographs and interpretive testimony based thereon excessive with respect to the dereliction

---

[9]We thus reject Puritan's contention that Tri-C's *exclusive* remedy is an instruction pursuant to Evidence Code section 413.

Puritan contends Tri-C improperly delayed obtaining the shaft from Ray for a period of eight months. Puritan suggests the shaft would not have been lost had Tri-C obtained it at an earlier date. On the record presented, the argument is pure speculation which we will not consider.

Puritan also contends that sanctions may only be imposed where nondisclosures in violation of discovery orders are proven prejudicial. Puritan cites no authority for this proposition and we have found none. We consider the contention to be without foundation. (*Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4391.) We note that it would often be impossible for a party to prove he was prejudiced by not learning what he hasn't learned and doesn't know. The law requires neither the impossible nor idle acts which attempt it. (Civ. Code, §§ 3531, 3532.)

involved. (*Wilson* v. *Jefferson, supra,* 163 Cal.App.3d at p. 958; *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.) Exclusion of the photographs and interpretive testimony was not "required to protect the interests of the party entitled to but denied discovery" and thus exceeded what was "appropriate to the dereliction." (*Ibid.*)

In fact, respondent court's order excluding the photographs and all interpretive testimony arguably leaves Tri-C better off than it would have been had the failed shaft been produced. (See *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.) By excluding the photographs respondent court eliminated all evidence potentially revealing defects in the shaft. By removing even the potential that Puritan may prove its case respondent court has unquestionably left Tri-C in a more favorable position than it would have occupied had both the shaft and the photographs been available at trial. This respondent may not do. (*Ibid.*) We conclude the trial court's automatic exclusion of the photographs and interpretive testimony based thereon constitutes an abuse of discretion.

So that we are not misunderstood, we add that we are not ruling that the photographs, nor expert testimony based on their examination, are necessarily admissible at trial. Although no claim has been tendered here that the photographs are unauthentic, so far as the record before us discloses, the issue has simply not been litigated. Moreover, assuming authenticity is sufficiently established, there remain other questions of relevancy, such as whether the photographs are of sufficient resolution or clarity to permit expert analysis of the kind sought by the parties.[10] These issues may be appropriately submitted to the trial court in the form of evidentiary objections. We hold simply that the photographs and interpretive expert testimony based exclusively thereon[11] may not be excluded from evidence as a discovery sanction.

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent Yolo County Superior Court to vacate its sanction order insofar as it prohibits Puritan's

---

[10]If the lost item of evidence had been a stop sign, and if the question were whether the sign was red, color photographs showing a red sign would tend to prove the point at issue. Here, it appears the point at issue is why a shaft fractured. Whether the photographs are relevant as evidence on that issue is a matter for resolution by the trial court.

[11]To the extent Puritan offers expert testimony which depends for its integrity on tests, examinations, or observations of the original shaft, the testimony should be excluded.

introduction of photographs taken of the failed shaft and expert testimony interpreting the photographs.

Regan, Acting P. J., and Carr, J., concurred.