Filed 7/1/21  DCM-P1 v. Rushmore Loan Management Services CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DCM-P1, LLC,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC, et al.,<br><br>     Defendants and Respondents. | B303878<br><br>(Los Angeles County<br>Super. Ct. No. BC677324) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Levoto Law and Stephen D. Weisskopf for Plaintiff and Appellant.

Alston & Bird, Michael J. Agoglia, Rachel A. Naor, Deborah Yoon Jones and Gillian H. Clow for Defendants and Respondents.

_____

Plaintiff DCM-P1 LLC (DCM) and defendants Rushmore Loan Management Services LLC (Rushmore), Roosevelt Management Company LLC (Roosevelt), and Dakota Asset Services LLC (Dakota) (collectively, defendants) resolved a discovery dispute by stipulating that DCM would respond to discovery requests by a certain date; DCM agreed that if it did not timely respond, it would dismiss its complaint with prejudice. After DCM did not provide timely or complete responses, defendants moved to dismiss the complaint based upon the stipulation. The court granted the motion and entered a judgment of dismissal. DCM appealed.

DCM contends that the stipulation is unenforceable because its counsel entered into the stipulation without its consent. It further contends that, if the stipulation is enforceable, it amounts to an unjustifiable terminating sanction. We reject these arguments and affirm the judgment.

## FACTUAL SUMMARY

DCM filed its initial complaint in this case in September 2017. In December 2018, it filed its third amended complaint. According to that pleading, Rushmore acted as the servicing agent for the trustee of a trust comprised of residential mortgage loans and real properties.

In April 2017, the trustee allegedly assigned to DCM the trustee's rights to file "a lawsuit against Rushmore on behalf of the [t]rust" to recover damages and obtain other relief. In May 2018, the trustee allegedly further assigned to DCM its "right to pursue an action against Rushmore's affiliated entities." Rushmore's affiliated entities include Roosevelt (Rushmore's parent corporation) and Dakota (a subsidiary of Rushmore).

2

DCM alleged that Rushmore breached its servicing agreement in a variety of ways, including failing to remit sums to the trust, diverting sums "for its own gain and/or that of its affiliates," and improperly selling real properties below market value. DCM further alleged that Dakota was negligent and unjustly enriched itself by, among other acts, providing inaccurate opinions of property values to Rushmore, which Rushmore relied on in selling the properties.[1] Rushmore's and Dakota's practices also allegedly had the effect of unjustly enriching Roosevelt by maximizing its return on certain notes to the detriment of trust beneficiaries.[2]

In the third amended complaint, DCM refers to a "forensic analysis of 471 liquidated mortgage assets," which it defines as "the analysis" and which allegedly "confirms that the damages resulting from Rushmore's conduct are substantial." (Capitalization omitted.)

During a status conference held on February 25, 2019, the court and counsel discussed a plan proposed by the defendants by which discovery would proceed in phases. In the first phase, DCM would produce the analysis referred to in its third amended complaint. During phase two, the parties would "complete the exchange of previously requested, highly relevant

---

[1] DCM also alleged a cause of action for fraud against Dakota. In April 2019, the court sustained Dakota's demurrer to that cause of action without leave to amend. That ruling is not challenged on appeal.

[2] In April 2018, Rushmore and Dakota filed a cross-complaint against RMS Asset Management, LLC (RMS) for express contractual indemnity and declaratory relief. RMS is not involved in this appeal.

documents identified in the [third amended complaint] or in writing during the prior meet and confer discussions." In the third phase, DCM was to identify each loan or property that is the subject of their claims by "I.D. number" or property address, and provide a short explanation of the factual basis for each claim. The fourth and fifth phases are focused on obtaining "targeted additional information" regarding the particular transactions that are the subjects of DCM's claims.

During the conference, counsel for DCM, Benjamin Cutchshaw, agreed that there was no dispute concerning the first three phases of the discovery plan. Regarding the analysis that is the subject of phase one, Cutchshaw said that it would include the "input and output that make up the analysis," and he "would have it produced within ten days." The court allowed DCM "two weeks." Counsel agreed that phases two and three could take place concurrently and be completed in 30 days. The court then set April 8, 2019 (38 days after the conference), as the deadline for completing phases one through three and set a "status conference re discovery" for April 19, 2019.

In response to phase one of the discovery plan, DCM produced a 29-page report, which defendants deemed insufficient. DCM did not provide any responses pursuant to phases two or three. Meet and confer efforts among counsel failed to resolve the disputes.

On April 17, 2019, defendants served a status report in advance of the April 19, 2019 case management conference. Defendants reported that DCM's production of the phase one documents was inadequate and that DCM produced no phase two or phrase three documents. Defendants stated that they

4

would raise the issue of DCM's "discovery abuses" and the possibility of sanctions at the case management conference.

On the evening of April 18, 2019, Cutchshaw and counsel for defendants engaged in telephone calls and exchanges of emails which culminated in an email from Cutchshaw to defendants' counsel stating: "Client will agree to your proposed offer. Please confirm with your client. To be clear, we will . . . agree to produce remaining discovery phases within two weeks or consent to case-terminating sanctions."

Defendants' counsel responded the next morning: "Spoke to my client. We will stip[ulate] to that . . . , provided it's clear that what we're talking about is a full and complete production following a reasonably diligent search of the materials responsive to phase 1 and 2, and that for phase 3 DCM is obligated to identify for each loan or property subject to its claims (1) the relevant servicing ID # and address, (2) the claims to which each is subject, (3) and short explanation of its basis." (Capitalization omitted.)

At the status conference held on April 19, 2019, Cutchshaw informed the court of the stipulation reached with defendants' counsel. Pursuant to the stipulation, DCM agreed to produce all responsive documents within two weeks; that is, by May 3, 2019. In addition, DCM agreed to identify the specific loans that are the subject of its claims, and identify "any specific allegations with respect to [each] particular loan." "Within that two weeks[,] if those documents can't be provided . . . , DCM will agree to dismiss the case with prejudice." Counsel for defendants explained "that if DCM is unable to comply with its obligation[s], . . . it will on its own file a motion for a request for dismissal with prejudice with this

5

court without further action." The court then set a further case management conference for May 24, 2019.

On May 2, 2019, Cutchshaw sent an email to DCM's counsel requesting an additional week to produce documents due to "staffing and budget issues impacting DCM." Defendants' counsel informed Cutchshaw that defendants would not agree to a further extension.

DCM did not produce any documents by the May 3, 2019 deadline. Counsel for defendants and Cutchshaw thereafter exchanged emails in which defendants' counsel requested DCM dismiss the third amended complaint in accordance with the April 19 stipulation, and Cutchshaw said DCM would not.

On May 7, 2019, defendants' counsel received 19 pages of documents, 12 pages of which had been previously produced. The seven new pages consisted of a list of 312 loans and related property addresses and, for each, an indication that the loan relates to a claim by DCM described as either an "undefined loss" or "improper liquidation."[3] (Capitalization omitted.) In addition to being untimely, defendants considered the production to be insufficient.

On May 13, 2019, defendants filed an ex parte application for entry of dismissal of the third amended complaint based on the April 19 stipulation. The court denied the application, stating that a dismissal related to discovery would require a noticed motion.

---

[3] According to Cutchshaw, "undefined loss" refers to the servicer's failure to remit funds due to the trust, and "improper liquidation" refers to a sale of real property for an "inadequate value."

On or about June 3, 2019, defendants' counsel learned that DCM was no longer in good standing under Delaware law. Defendants informed the court of this fact in a status report filed on June 4, 2019. According to Cutchshaw, DCM revived its good standing status with the Delaware Secretary of State on June 5, 2019. Defendants, however, submitted evidence showing that DCM's good standing status "[c]ease[d]" again on June 12, 2019. As of September 11, 2019, DCM was back in good standing with the Delaware Secretary of State.

On June 6, 2019, the court held a status conference at which defendants' counsel appeared and plaintiff's counsel did not. The court directed defendants to prepare a noticed motion to dismiss the third amended complaint. The court set a hearing on the motion for July 16, 2019.

On June 14, 2019, defendant filed a motion to dismiss the third amended complaint based on DCM's failure to comply with the April 19 stipulation. In support of the motion, defendants submitted the declaration of Adam Le Berthon, counsel for cross-defendant RMS. Le Berthon stated that on April 19, 2019, he spoke with Cutchshaw before and after the case management conference at which the stipulation was put on the record. Cutchshaw told Le Berthon "that there was no way DCM could possibly comply with their delinquent and outstanding discovery obligations in this matter" and that "DCM's claims were effectively a 'holding action' and were being pursued to ward off creditors."

DCM did not file an opposition to the motion or appear at the hearing on the motion.[4]

On July 16, 2019, the court granted the motion and ordered the third amended complaint dismissed with prejudice.

On July 23, 2019, DCM filed a motion to set aside the order granting the motion to dismiss. DCM based its motion solely on the attorney neglect provision of Code of Civil Procedure section 473, subdivision (b).[5] In support of the motion, Cutchshaw filed a declaration describing his efforts to file written opposition to the motion and to appear at the hearing on the motion, and how these efforts failed because the vendors that handled the firm's filing and telephonic court appearances declined to provide these services because of unpaid invoices.

In support of the motion to set aside the dismissal, DCM provided a copy of the written opposition to the motion

---

[4] DCM later asserted that it attempted to file an opposition but that it was "rejected due to an accounting issue with [DCM's] counsel's e-filing vendor." It explained the failure to appear at the hearing as the result of a failure to reserve a court call appearance "due to an internal misunderstanding."

[5] Code of Civil Procedure section 473, subdivision (b) provides in relevant part: "[T]he court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any . . . resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

to dismiss that Cutchshaw had attempted to file. The opposition acknowledged the "discovery stipulation reached on April 19, 2019" and DCM's obligation "to produce documents responsive to previously defined phases 1–3 in its possession, custody, or control by May 3, 2019." (Capitalization omitted.) According to DCM, it complied with its obligations under the stipulation and defendants refused to meet and confer in good faith regarding the discovery dispute.

On October 9, 2019, the court granted DCM's motion based on its finding that DCM's non-opposition to the motion to dismiss resulted from Cutchshaw's inadvertence and excusable neglect. The court set aside its order dismissing the third amended complaint and set a hearing on defendants' motion to dismiss.

After additional briefing and oral arguments on October 25 and November 4, 2019, the court granted defendants' motion to dismiss and thereafter entered judgment of dismissal. The court explained that it was granting the motion for "all the reasons asserted by the [defendants], but especially that in phase three, there was substantive information that should have been provided as to each particular claim," but was not provided.

The court's order entering the judgment of dismissal states that "DCM entered into a stipulation . . . whose terms unambiguously required full and complete compliance with phases 1, 2, and 3 of the previously ordered discovery following a reasonable and diligent search for responsive documents and information by May 3, 2019, or DCM's claims would be dismissed with prejudice"; "[t]he record demonstrates that DCM failed to comply with its obligations, by May 3, 2019 or since,

9

with respect to any of those phases of discovery, and that DCM's failure was particularly evident with respect to phase 3"; and "[i]n accordance with the plain terms of the stipulation, and for all the reasons articulated in the motion to dismiss, the third amended complaint against defendants is hereby dismissed with prejudice in its entirety." (Capitalization omitted.)

On December 9, 2019, DCM filed a motion for reconsideration of the order dismissing the third amended complaint. DCM argued that the failures in responding to discovery that led to the order dismissing its case were the result of DCM's dire financial circumstances. The required discovery responses, it argued, "could *only* be acquired and produced if [DCM] had a full staff and access to its cloud-based records." During the critical time, however, it had to "lay off nearly every employee, and was unable to pay its most basic bills including cloud storage, email backup, and professional service providers."

DCM explained that its cash flow depended in part on payments from Wells Fargo Bank, the "paying agent" for the trust (capitalization omitted), and in part on cross-defendant RMS's authorization for the payment of DCM's expenses. The lack of funds during the pertinent time period resulted from RMS's refusal to authorize payments to DCM and Wells Fargo Bank's failure to send payments to DCM. During that time, DCM was engaged in negotiations concerning the trust with Wells Fargo Bank's attorneys, the law firm of Alston & Bird. Alston & Bird was also counsel for defendants in this litigation. DCM argued that "[t]his undisclosed conflict of interest casts serious doubt on the legitimacy of these proceedings and . . . should be considered by the [c]ourt."

DCM supported the motion for reconsideration with a declaration from Matthew Browndorf, the "managing member and authorized representative" of DCM's general manager. According to Browndorf, he had been working with attorneys at Alston & Bird, who represented Wells Fargo Bank in connection with DCM's efforts to obtain changes to the trust that would be financially advantageous to DCM. Alston & Bird, however, seemed to be "making matters overly complicated." At some point, Browndorf learned that Alston & Bird represented defendants in this action; he thus had reason to believe that the law firm had a conflict of interest and that Wells Fargo Bank had inappropriately failed or refused to remit payments to DCM.[6]

DCM appealed.

## DISCUSSION

DCM contends that it did not authorize Cutchshaw to enter into the April 19 stipulation and, because the stipulation affects its substantive rights, it is not bound by it. (See, e.g., *Linsk v. Linsk* (1969) 70 Cal.2d 272, 276 [attorney may "bind the client in procedural matters arising during the course of the action but he may not impair the client's substantial rights or the cause of action itself"]; *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 404 [attorney had implied authority to stipulate as to procedural matters, but "attorney must be specifically authorized to settle and compromise a claim"].)

---

[6] It does not appear from our record whether there were further proceedings or a ruling on DCM's motion for reconsideration.

11

As defendants point out, DCM did not assert this argument below, despite several opportunities to do so, and the argument is unsupported by citations to the record. In response to defendants' ex parte application to dismiss the third amended complaint based on the stipulation, for example, DCM opposed the application on the ground that it had complied with the stipulation, not that it had not authorized it or that the stipulation was otherwise unenforceable. In its July 2019 motion to set aside the order granting defendants' motion to dismiss based on attorney neglect, DCM did not argue or indicate that the stipulation was unauthorized or void. In its opposition to defendants' noticed motion to dismiss, DCM expressly acknowledged the "discovery stipulation reached on April 19, 2019," and opposed the motion on the grounds that it had complied with its discovery obligations and defense counsel had failed to meet and confer in good faith. During two hearings on the motion to dismiss, DCM argued that it had produced all documents called for in the stipulation, and did not assert that the stipulation was unauthorized or unenforceable.

Even if the absence of an argument that the stipulation was unauthorized can be explained by the fact that DCM's arguments in each instance were asserted by Cutchshaw—the same attorney who announced the stipulation—this explanation is belied by the declaration of DCM's managing member and "authorized representative," Browndorf, in support of the December 2019 motion for reconsideration. By that time, the court had, in the judgment of dismissal, expressly found that "DCM entered into [the April 19] stipulation." In seeking to have that judgment set aside, Browndorf submitted his declaration in support of DCM's argument that DCM's difficulty

12

in fulfilling its discovery obligations was due to DCM's financial situation at the relevant time. Conspicuously absent from his declaration is any suggestion that DCM did not authorize the stipulation.

Generally, " 'issues not raised in the trial court cannot be raised for the first time on appeal.' " (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417; accord, *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264.) This rule "is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' " (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) Allowing an appellant to assert a new, fact-based theory on appeal "would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240−241.) These reasons apply forcefully here. As defendants contend, if the argument had been asserted below, the critical fact—DCM's authorization of Cutchshaw's actions—could have been litigated and defendants would have had the opportunity to obtain and present evidence supporting such authorization. Although there is an exception to this general rule where the new issue involves only questions of law or undisputed facts (see *Ward v. Taggart, supra*, 51 Cal.2d at p. 742), that is not the case here; DCM's authorization is a disputed question of fact.

Defendants' point that DCM fails to support its argument with pertinent citations to the record is also well-taken. In its opening brief, DCM states, for example, that it "did not

13

know about the stipulation at the time it was entered and only learned about it after the dismissal was granted and judgment was entered by the court." At another point, DCM states: "Neither [DCM's] Chief Investment Officer, Matthew Browndorf, nor anyone else at [DCM] has any recollection of their counsel discussing this and seeking their authority to compromise the lawsuit. If counsel had, [DCM] would not have authorized such a stipulation given the circumstances." No citations to the record are offered for these and similar statements, and our own review of the record reveals no support for them.

"It is axiomatic that an appellant must support all statements of fact in his briefs with citations to the record." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29; see Cal. Rules of Court, rule 8.204(a)(1)(C).) We may, and in this case do, disregard a party's statements of fact when those statements are unsupported by citations to the record. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520; *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149.) Without such statements, there is no factual support for DCM's assertion that it did not authorize entry into the stipulation.

Even if the argument that DCM did not authorize Cutchshaw to make the April 19 stipulation was properly before us, we would reject it. The order dismissing the third amended complaint is premised upon the court's factual finding that "DCM entered into [the April 19] stipulation." We review factual findings to determine whether, based on the entire record, the findings are supported by substantial evidence; that is, "evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value.' " (*Conservatorship of*

14

*O.B.* (2020) 9 Cal.5th 989, 1006.)  Under this standard " 'we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.' " (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)

The court's finding that DCM entered into the stipulation is supported by:  (1) The April 18, 2019 email from Cutchshaw to defendants' counsel stating that his "[c]lient will agree to your proposed offer," which included DCM's "consent to case-terminating sanctions," and (2) defendants' counsel's declaration that Cutchshaw confirmed to him in court the following day "that DCM was in agreement with the terms as laid out in that email."  The finding is further supported by Cutchshaw's representation to the court at the April 19, 2019 conference that if the discovery is not provided in accordance with the stipulation, "DCM will agree to dismiss the case with prejudice." Such statements by DCM's counsel imply that DCM itself had approved the stipulation, and the court could reasonably draw that inference.  There is, therefore, substantial evidence to support the court's finding that DCM entered into the stipulation.

DCM further contends that even if the stipulation is enforceable, dismissing the third amended complaint is tantamount to a terminating sanction, which was not warranted in this case.  DCM supports its argument with cases addressing the propriety of terminating sanctions imposed under the Discovery Act.  (See *Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 701–702; *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 191; *Lopez v.*

15

*Watchtower Bible & Tract Society of New York, Inc.* (2016)
246 Cal.App.4th 566, 604−605; *Doppes v. Bentley Motors, Inc.*
(2009) 174 Cal.App.4th 967, 992; *Puritan Ins. Co. v. Superior
Court* (1985) 171 Cal.App.3d 877, 885.)  None of the cited cases
involves the enforcement of a stipulation among the parties,
as in this case.  In the absence of apposite authority to support
the argument, we reject it.  (See *Ewald v. Nationstar Mortgage,
LLC* (2017) 13 Cal.App.5th 947, 948 ["the failure to provide
legal authorities to support arguments forfeits contentions of
error"].)[7]

---

[7] Defendants filed a motion in this court for sanctions
against DCM and its appellate counsel for filing a frivolous
appeal.  We requested and received opposition to the motion
and provided counsel with the opportunity to argue the merits
of the motion together with argument on the appeal.  We denied
the motion.

16

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, P. J.

We concur:



BENDIX, J.



FEDERMAN, J.*


_____

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17