[No. D005627. Fourth Dist., Div. One. Sept. 30, 1987.]

H. K. SAUER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
OAK INDUSTRIES, INC., Real Party in Interest.

## Counsel

Monaghan & Metz, Brian D. Monaghan McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Virginia R. Gilson and James R. Milliken for Petitioner.

No appearance for Respondent.

Latham & Watkins, David F. Faustman and Kristine L. Wilkes for Real Party in Interest.

## Opinion

**KREMER, P. J.**—Petitioner H. K. Sauer seeks a writ of mandate to reverse the superior court's orders imposing monetary sanctions and excluding all evidence of economic loss in Sauer's action against real party in interest Oak Industries, Inc. (Oak), for wrongful termination of employment. We issued an alternative writ of mandate directing Oak to show cause why the relief prayed for should not be granted. Upon return and replication, oral arguments were heard. For the reasons set forth below, we deny the writ.

### Issues

Sauer challenges the propriety of three orders. The first is the proposed order of Referee Higgs granting part of Oak's motion to compel discovery and recommending $8,000 in monetary sanctions and costs against Sauer for willful failure to follow the rules of discovery. The second is Judge Jones's order adopting Referee Higgs's recommendations. The third, and perhaps most significant, is Judge Woodworth's order granting Oak's motion *in limine* to exclude all evidence of economic loss as a sanction for Sauer's willful noncompliance with court-ordered discovery.

Sauer contends the monetary sanctions imposed by Referee Higgs were improper as being without statutory basis and without proper findings or

reasons for their imposition. Sauer contends Judge Jones, who entered an order adopting Referee Higgs's proposed order compelling discovery and imposing monetary sanctions, acted arbitrarily. Sauer asserts Judge Jones failed to conduct an independent review of Referee Higgs's proposed order and also failed to afford Sauer an opportunity to argue the matter. Sauer further contends Judge Woodworth acted arbitrarily and capriciously in dismissing his claim for economic damages as a sanction because the evidence shows his failure to produce certain documents requested by Oak was inadvertent and because less onerous sanctions were more appropriate.

## Factual and Procedural History

Trial on Sauer's complaint for wrongful termination was originally set for August 27, 1986. In late May of 1986 counsel for all parties met to discuss the possibility of a continuance. Sauer's attorney, Brian Monaghan, strongly opposed a continuance, indicating a desire to proceed with the trial date regardless of whether all contemplated discovery was completed. The parties therefore entered into two stipulations setting forth the ground rules for the intensive discovery that was to take place over the next two and a half months. The first stipulation, approved by the court, provided for altered discovery cutoff dates and extended the time in which summary judgment motions could be heard prior to trial. The second stipulation provided, inter alia, that Sauer would respond to Oak's first set of interrogatories and produce all documents identified in the interrogatories no later than June 27, 1986. The stipulated discovery cutoff date was August 1, 1986.

Sauer had testified at his deposition in April 1985 about the existence and location of his personal financial records. Oak asked that these be preserved. A week later, Oak wrote Sauer requesting he produce copies of his personal financial records as well as his SEC notes (four pages of handwritten notes Sauer took while reviewing his deposition testimony taken during a Securities Exchange Commission investigation of Oak) and his calendar for 1982.

In a letter to Sauer dated June 17, 1986, Oak confirmed the expectation that Sauer would respond to the request for interrogatories and production of documents including his "*personal financial statements,* bank statements, tax returns, and the like, by the close of business June 27, 1986. . . ." (Italics added.) Despite the agreement between the parties concerning the significant discovery cutoff dates, Monaghan brought an ex parte motion on June 26 requesting a continuance of the trial date. The motion was denied.

Sauer produced documents on June 27, but, according to a letter from Oak's attorneys, the production was totally inadequate. The letter stated the documents provided consisted of 13 pages, most of which Oak claimed it had already produced for Sauer. In addition, the few documents that were produced were illegible in part. The letter further specified the various documents requested for production including "(f) Mr. Sauer's *bank statements and personal and business financial records since his resignation from Oak.*" (Italics added.) Also, the letter advised that Sauer's bank statements were "not privileged in cases of this type."

Finally, on July 2, Sauer provided Oak with his answers to interrogatories. Oak contends answers concerning damages were not provided. For example, Sauer referred Oak to Black's Law Dictionary in answer to interrogatories asking him to define his damages and to specify the damages he alleges he suffered. Also, Oak claims interrogatories addressing Sauer's postemployment income, Numbers 84, 85, and 86, were not answered based on Sauer's assertion he had already provided documentation to Oak in this area. Oak, however, asserts it never received such documentation.

Thereafter, on July 10, 1986, Oak served Sauer with a formal "Second Request for Production of Documents." Request Number 18 specifically sought "[a]ll documents and writings which constitute, reflect, discuss, mention, comment upon or otherwise refer or relate to plaintiff's bank statements and personal and business financial records since his resignation from or termination by Oak, including but not limited to: (a) All personal and business checking, savings and other account records from Great American and Glendale Federal or any other bank where plaintiff has or had an account; (b) Plaintiff's 'bank file' where he keeps financial documents as identified in his deposition; and (c) All documents referring or relating to plaintiff's 'IRA' accounts." Sauer had until July 30 to respond and produce.

In a letter dated July 16, Oak advised Sauer that certain documents had not been produced as requested including Sauer's bank records and financial statements. The letter further advised that "other documents located in Mr. Sauer's unsearched eleven boxes of documents in his garage" had not been produced. Sauer responded by claiming bank statements are privileged personal financial information.[1]

[1] Evidently, Monaghan had offered to let Oak's attorneys sort through Sauer's 11 boxes of documents. Oak rejected this offer, informing Monaghan in a letter dated July 29, that it was his responsibility to sort through the boxes and produce the documents requested. The letter

On August 1, Oak sent yet another letter to Sauer advising that his response to the second request for production of documents was due on July 30, and had not been received. According to a letter from Oak's attorneys dated August 4, Monaghan had "stipulated to shorten time for service and filing of defendant's motion to compel and for other relief." Thus, on August 5, 1986, Oak filed a motion to compel further answers to interrogatories and for production of documents. Oak's moving papers were voluminous. Sauer's opposition, however, filed on August 7, consisted of only four pages. Since Monaghan was to be out of town from August 6-14, the parties stipulated the matter would be heard by Referee Higgs on August 15.[2]

On August 7, Sauer responded to Oak's second request for documents, but the documents produced did not include three specific items: Sauer's SEC notes, his 1982 calendar or his personal financial records. Sauer's personal financial records were not produced on the ground they were confidential.

At the hearing before Referee Higgs, Oak outlined the instances of Sauer's failure to meet the stipulated discovery deadlines, his failure to produce requested documents and his failure to adequately answer certain interrogatories, specifically those pertaining to his postemployment income. Oak played a video tape of one of Sauer's expert witnesses showing she was unprepared at her deposition. Oak also informed the referee that another of Sauer's expert witnesses had failed to appear at his noticed deposition.

On August 18, Referee Higgs issued a proposed order in which he noted the brevity of Sauer's opposition papers. The referee also noted Sauer's opposition papers contained no supporting correspondence, declarations or citations, but only unsupported conclusory statements. Referee Higgs observed that Sauer's response to Oak's second request for production of documents was made only *after* the motion to compel was filed and was not only untimely and nonresponsive, but also unverified. Referee Higgs recommended that Sauer be ordered to "A) Identify those documents which are responsive to defendant's first set of interrogatories; [¶] B) Produce those documents identified pursuant to the terms of the parties' stipulation; [¶] C) Produce documents responsive to defendant's first and second requests for production to the extent those documents have not already been produced and to specifically provide the documents listed and described in OAK's

also reminded Monaghan that information regarding financial status is not privileged when the financial status of the individual is put in issue.

[2]Referee Higgs had heard other unrelated discovery matters in the case after the parties had been ordered to participate in the Alternatives to Litigation program.

Separate Statement Re Documents. . . ." Oak's Separate Statement Re Documents specified the documents yet to be produced, including Request Number 13 in the Second Request for Production of Documents for "Sauer's financial records and bank statements including those regarding his real estate and business endeavors, banking transactions and loan documents, and his 'bank file.' "[3] Item C of the proposed order requiring production of documents responsive to Oak's first and second requests for production of documents not yet produced included Request Number 18 for "All documents and writings which constitute, reflect, discuss, mention, comment upon or otherwise refer or relate to plaintiff's bank statements and personal and business financial records since his resignation from or termination by Oak. . . ." Referee Higgs also recommended that Sauer be required to pay certain costs and "sanctions in the form of costs and attorneys' fees in the amount of $5,327.00" as well as $2,740 for the cost of the proceeding. In a letter to the court accompanying his proposed order, Referee Higgs stated "[i]t is clear from the material furnished to me by Oak that the plaintiff's attorney has not followed or even attempted to follow the rules of discovery. . . ." On August 19, Judge Jones signed the referee's order without modification.

The next day, Sauer appeared ex parte before Judge Jones to object to the order. However, he objected only to the imposition of the monetary sanctions, not to the substance of the order compelling discovery or the procedure followed by the referee.

On August 22, Sauer served Oak with supplemental responses to interrogatories and produced some documents. In response to Interrogatories Numbers 84, 85 and 86 concerning Sauer's postemployment income, Sauer responded "Plaintiff can add nothing to what he has previously responded in Answer to Interrogatories 84, 85 and 86." Sauer neither produced nor offered to produce his personal financial documents, his 1982 calendar or his notes from his SEC deposition testimony.

On August 25, Oak wrote to Sauer requesting immediate production of the enumerated documents including Sauer's calendars from 1982, 1985 and 1986, Sauer's notes taken when he reread his SEC deposition transcript, and Sauer's financial records and bank statements including those regarding his real estate and business endeavors, banking transactions and loan

[3]This language was followed by a reference to Sauer's deposition when he testified as to documents of personal bank accounts, cancelled checks and loan documents kept in his "bank file."

documents and his "bank file." The letter further requested Sauer properly answer Interrogatories Numbers 84, 85 and 86.

In response to this letter, Sauer wrote Oak stating he did not maintain calendars for 1985 or 1986 and that "[d]espite careful investigation, the calendar for 1982 has not been discovered." Sauer also stated his SEC notes had not been found "despite careful investigation." With respect to Oak's request for production of Sauer's personal financial records and bank statements, Monaghan stated those documents are voluminous, "require a compilation of business records and are available in their entirety for inspection and copying at the office of plaintiff's counsel in the same manner you made documents available to us; . . ."

Oak's counsel, after informing Monaghan of his intention to inspect the documents at 9 a.m. on August 29, went to Monaghan's office but found the documents were not in fact available. That same morning, Oak sent Sauer a letter stating that contrary to Judge Jones's order and Monaghan's representations, Sauer's personal financial documents had not been produced. The letter further stated Oak intended to argue for dismissal of the case due to Sauer's repeated failure to produce these documents.

Five days before trial was scheduled to begin, Oak brought a motion *in limine* to enforce Judge Jones's discovery order and for sanctions for failure to comply with that order. In its moving papers, Oak argued that on August 22, Sauer had produced a box of documents but no formal response listing the documents responsive to the particular requests and verified by Sauer was provided. Approximately one-half of the documents produced were documents Oak had previously produced to Sauer. Numerous documents that had been ordered produced were not turned over. Oak requested dismissal of the action as a sanction for refusal to comply with the discovery order or alternatively for other sanctions.

At the hearing on the motion *in limine* on September 3, the court stated that outright dismissal of the action was too harsh a sanction. Oak's attorney argued that in light of that ruling, Sauer should be precluded from proving that his emotional distress was caused by his financial situation due to his failure to produce his personal financial documents, that Sauer be precluded from mentioning the SEC in any way based on his failure to produce his SEC notes, and that the court take as established that Sauer did not mitigate his damages due to his failure to produce his 1982 calendar.

In response, Sauer argued the 1982 calendar was not relevant because he resigned effective January 1983. He also said the SEC notes had been found the previous day and he presently had them for the court's in camera inspection because the notes may be privileged. Sauer claimed he had produced everything he thought was required by the court's order. He also argued he offered Oak numerous opportunities to sort through the business records and that he basically believed that by making the boxes of documents available for inspection by Oak, he was complying with the request to produce.[4] Sauer offered to produce his personal bank accounts and personal checkbooks the following morning, contending he had never been ordered or requested to produce them. Although Sauer offered to produce his financial records the next day, those records were not lodged with the superior court until September 26, that is, after sanctions were imposed and, we are told, in order "to protect the record for purposes of taking this writ."

After hearing arguments, the court made the following ruling regarding the discovery issues: "It appears to the Court that there has been a flagrant, inexcusable, and protracted noncompliance with the pretrial discovery order respecting personal financial records of the plaintiff, which justified drastic sanctions. [¶] I have considered various alternatives, such as financial sanctions, such as putting the case off calendar, such as ordering instantaneous compliance, and with the plaintiff to bear the expense of analyzing the financial records. And none of those sanctions seems to me to fit the nature of the default. [¶] I, therefore order that all evidence of economic loss be excluded from the plaintiff's case. [¶] The nondelivery of the financial records is the primary reason, but an incidental reason was the misplacement of the 1982 calendar which, it seems to me, could very reasonably have a material bearing on such issues as the reason for the plaintiff's termination, the possibility that he had other employment opportunities available to him, or actual or possible steps to mitigate at or about the time he was terminated. [¶] I doubt that I would have imposed such a drastic sanction because of that default only, since it is not clear to me that that was a willful default at all, but it is an incidental justification, and the nonproduction of financial records can only be viewed objectively as a willful noncompliance. [¶] As to the S.E.C. testimony, I have already tentatively ruled, and I now rule formally, that the claim of privilege has been waived because of the chronological sequence of procedural events which are

[4] In attempting to explain the reason for his noncompliance, Monaghan stated: "What has happened is, we attempted to do something which my resources as a small firm was [*sic*] unable to do, and we did the best we could. [¶] The rules kept changing as you went along. 'We want more and more information.' In the meantime, we are taking all of these depositions. [In] the meantime, we are trying to prepare for trial. [¶] That is really in fact what happened. Maybe it was a poor strategy decision on my part to attempt to keep up, but I've been papered to death."

already in the record, and that will be made available forthwith to the defendant in the case."

The court then gave Sauer an opportunity to seek an immediate reconsideration of the court's order by making a showing that the documents withheld were not material to the litigation. Sauer argued the nonproduction of the documents was not prejudicial to Oak on the ground Oak already had other documents relevant to the issues of mitigation of damages and postemployment opportunities and economic loss. However, the court ruled the very information withheld might have shown damages simply were not incurred or should have been mitigated and that the missing calendar entries for 1982 also bear on the same possibilities.

On September 19, Sauer brought a motion for reconsideration before Referee Higgs. Sauer argued the referee's order subsequently adopted by Judge Jones was vague and ambiguous and should be amended or modified. Once the ambiguity is omitted, he urged, Judge Woodworth would then have the opportunity to reconsider his ruling Sauer failed to comply with the discovery order. He argued there was no language in the referee's proposed order requiring production of Sauer's *personal* checking account. Thus, he claimed, his failure to produce those documents was not willful but was based on an ambiguity in the referee's order. Sauer further argued the sanctions imposed were unreasonable.

After hearing argument and considering briefing, Referee Higgs issued a supplemental order amending his proposed order of discovery, stating: "Plaintiff shall pay defendant sanctions in the sum of costs and attorneys' fees in the amount of $5,327.00 pursuant to the provisions of California Code of Civil Procedure section 2034(a) [*sic*], because, as set forth herein plaintiff's position was 'willful' and 'without substantial justification.'"

Sauer then filed a motion seeking review of Judge Jones's order compelling discovery and denial of his motion for reconsideration before Referee Higgs. The court ruled there was no apparent ambiguity in the order, specifically noting that the order required response to Request Number 18 for "all documents and writings which constitute . . . or relate to plaintiff's bank statements and personal and business financial records since his resignation." The court denied the motion.

On October 29, Sauer filed a motion for reconsideration and for relief under Code of Civil Procedure[5] section 473. At the hearing on his motion before Judge Woodworth, Sauer again argued ambiguity of the discovery order, his unawareness that Oak requested his personal financial records, and the lack of prejudice to Oak created by the nonproduction of these documents. As to Sauer's argument of no prejudice, the court stated: "[T]hat there is no prejudice to [Oak] by virtue of the noncompliance with the earlier discovery order begs the question entirely, which is that [Oak was] entitled to make [its] own decision; and that in effect there is a conclusive presumption of prejudice when the material is not made available to [Oak], in compliance with the four corners of the earlier discovery order." Finding Sauer's noncompliance was "egregious," the court denied the motion. This writ proceeding followed.

## Discussion

### I

Sauer contends the referee erred in awarding Oak $5,327 in sanctions. He asserts the referee failed to refer to any statutory basis for the award, failed to give any reason for making the award, and failed to specify his method of calculating the amount of monetary sanctions.

Under section 2034, subdivision (a), a party serving a request for production of documents may seek a court order for compliance with the request where the party served has refused or failed to produce such documents. If the court finds the refusal or failure was without substantial justification, it may require that party to pay to the requesting party the amount of reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. Attorney's fees and expenses may be awarded when a motion to compel is granted; the sanctioned party need not have refused to obey an existing court order. (See *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 789 [149 Cal.Rptr. 499].)

Here, the referee's order imposing sanctions specifies several instances of Sauer's failure to follow the rules of discovery: he failed to timely respond to Oak's first set of interrogatories and failed to verify his answers; he failed to timely respond to Oak's second request for production of documents; and he failed to produce those documents. In its amended order, the referee found Sauer's position in failing to answer and produce was "willful" and

[5] All statutory references are to the Code of Civil Procedure.

"without substantial justification," and accordingly, awarded Oak its costs in obtaining the order as well as its reasonable attorney's fees under section 2034, subdivision (a).[6] Because the record supports the referee's finding Sauer acted willfully and without substantial justification, we cannot say he abused his discretion in imposing sanctions.

II

Sauer contends he was denied due process when Judge Jones signed the referee's order without giving Sauer an opportunity for a hearing. Relying on *Aetna Life Ins. Co.* v. *Superior Court* (1986) 182 Cal.App.3d 431 [227 Cal.Rptr. 460], Sauer asserts the court may not adopt a referee's findings without a full hearing on the merits.

In *Aetna,* the trial court made an order assigning the parties' law and motion and summary judgment proceedings to a referee for hearing and determination. The order specified the referee was a "special" referee. (*Id.* at pp. 433-434.) After the referee made findings of fact and conclusions of law, counsel for *Aetna* asked the trial court for a hearing on the referee's report. The court denied the hearing and made an order accepting the referee's report, stating the findings and conclusions were without substantial controversy and " 'shall be deemed established.' " (*Id.* at p. 435.) Aetna then brought a writ of mandate challenging this order.

In reviewing the order, this court concluded the superior court had erroneously treated the referee's findings and conclusions as binding and determinative of the issue. Only in a consensual general reference can a referee make a binding determination. (*Id.* at p. 436.) Because the record lacked evidence of a written agreement of the parties to a binding general reference (see § 638), the referee's order was merely advisory. Thus, we held, failure to allow a hearing on the referee's findings was "an abdication of judicial responsibility not authorized by law and contravening the constitutional restrictions upon the exercise of judicial power." (*Aetna Life Ins. Co.* v. *Superior Court, supra,* 182 Cal.App.3d at p. 436.)

[6] Contrary to Sauer's assertion, the referee was not required to specify his method of calculating the amount of attorney's fees. Nevertheless, in his letter to Judge Jones, Referee Higgs stated Oak had requested sanctions in the amount of $10,653.75, but he reduced the amount by half due to Oak's tardiness in filing its motions and scheduling argument and its excessive amount of moving papers.

Here, as in *Aetna,* the record contains no evidence the parties agreed in writing to the discovery matters being heard by a referee.[7] Thus, the reference was special, not general, and not binding on the superior court. However, unlike the facts in *Aetna,* here there was both a rehearing and evidence Judge Jones considered the matter independently of the referee's decision.

The day after Judge Jones signed the referee's order, Sauer appeared ex parte before Judge Jones to object to the order, specifically the imposition of sanctions. The record does not reflect Judge Jones refused to hear Sauer's objections. Then, on October 27, 1986, Sauer brought a motion opposing the recommended order of the referee, arguing the order was ambiguous. At that hearing, Judge Jones stated he had reviewed the referee's order and the parties' moving papers at the time he signed the order and again for the present hearing. He further stated the referee's order that he signed was not ambiguous. "I saw no reason to change that order based on the findings that had been made by the referee. The findings were supported by a lot of information that would justify his conclusions, I thought." Thus, in hearing the matter and independently reviewing the referee's order, Judge Jones did not abdicate his judicial responsibility. (Cf. *Aetna Life Ins. Co.* v. *Superior Court, supra,* 182 Cal.App.3d at p. 436.) Sauer was not denied due process.

III

Sauer contends the court abused its discretion in finding there had been flagrant, inexcusable and protracted noncompliance with the court's discovery order and on that basis imposed sanctions precluding him from proving his economic damages at trial. He asserts his failure to produce his personal financial records was, at most, the result of an excusable misinterpretation of the court's order. However, the record supports the court's finding Sauer knew his personal financial documents were being sought and had been ordered produced.

After Sauer testified at his deposition about the existence and location of his personal financial records, Oak asked that they be preserved. A week later, Oak requested Sauer produce copies of these records as well as his SEC notes and 1982 calendar. In May 1986 the parties stipulated that Sauer would respond to Oak's first set of interrogatories and produce all documents identified in those interrogatories no later than June 27, 1986. Included in Oak's requests were Sauer's personal financial records. On June 17,

[7] The record belies Oak's counsel's representation at oral argument the parties had stipulated to the reference.

Oak wrote Sauer reminding him of the request for his personal financial records and bank statements in accordance with the parties' stipulation. However, on the day the answers and documents were due, Sauer objected to producing his personal bank statements, saying they were privileged.

Oak then served a formal request for production of documents. Request Number 18 sought Sauer's bank statements and personal and business financial records including all personal and business checking, savings and other accounts. On the date set for production, Oak wrote Sauer seeking some response when none was received. When Oak filed a motion to compel discovery of these documents, Sauer responded by objecting to the production of his personal financial records on the ground of confidentiality.

The referee's order of August 18 requiring Sauer to produce documents responsive to Oak's formal document request included Request Number 18—Sauer's personal financial records. The order also required Sauer to produce the documents described at Item Number 13 of Oak's Separate Statement re Documents which sought Sauer's financial records and bank statements. When Sauer failed to comply, Oak again requested his financial records and bank statements. Sauer offered Oak the opportunity to inspect and copy them at Monaghan's office, but Sauer's personal financial documents were not in fact available. When Sauer persisted in his failure to produce these documents, Oak informed him of its intention to bring a motion for dismissal of Sauer's case.

Based on this evidence, it is inconceivable Sauer misunderstood the referee's order. There were no less than six requests for Sauer's personal financial records before Oak brought the motion to compel. In fact, Sauer acknowledged these requests by objecting on the ground his bank statements were privileged personal financial information. Further, the only reasonable interpretation of the referee's order requires production of Sauer's *personal* financial records. Sauer's assertion he believed the order compelled production of his *business* financial records is unpersuasive. Because Sauer had already produced these documents, it is illogical to assume Oak would continue to insist on their production or bring a motion to compel.

Stated another way, substantial evidence supports the trial court's finding Sauer's noncompliance was willful. (See *Alliance Bank* v. *Murray* (1984) 161 Cal.App.3d 1, 10 [207 Cal.Rptr. 233].) "A willful failure does not necessarily include a wrongful intention to disobey discovery rules. A conscious or intentional failure to act, as distinguished from accidental or

involuntary noncompliance, is sufficient to invoke a penalty. [Citation].” (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at pp. 787-788.) Where the trial court finds the essential fact of willfulness, that finding is entitled to deference on appeal. (*Flynn* v. *Superior Court* (1979) 89 Cal.App.3d 491, 496 [152 Cal.Rptr. 796]; *Calvert Fire Ins. Co.* v. *Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593].)

Here the record shows Sauer had many opportunities to comply with the court’s discovery order or seek to clarify its provisions.[8] Having failed to do either, his belated claims of “good faith” and “mistake” cannot now vitiate the court’s finding of willfulness. (See *Karz* v. *Karl* (1982) 137 Cal.App.3d 637, 650 [187 Cal.Rptr. 183].)

Having determined the imposition of sanctions was proper due to Sauer’s willful failure to comply with the court’s order, our next inquiry is whether the particular sanction chosen—exclusion of all evidence of economic loss—was appropriate under the circumstances. More appropriately framed, the issue is not whether this court would have imposed an issue-preclusion sanction, but whether the trial court abused its discretion in doing so. (See *National Hockey League* v. *Met. Hockey Club* (1976) 427 U.S. 639, 642 [49 L.Ed.2d 747, 751, 96 S.Ct. 2778].) We conclude there was no abuse of discretion.

Section 2034, subdivision (b)(2) allows the trial court to impose one of several specific sanctions for failure to obey a discovery order. The court has broad discretion in imposing discovery sanctions, subject to reversal only for arbitrary, capricious or whimsical action. (*Kahn* v. *Kahn* (1977) 68 Cal.App.3d 372, 380-381 [137 Cal.Rptr. 332].) The sanction imposed “should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery. Where a motion to compel has previously been granted, the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause.” (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.)

Where a party has refused to supply information relevant to a particular claim, an order precluding that claim is an appropriate sanction. (§ 2034, subd. (b)(2)(B); *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 792; see also

[8] Only after sanctions were imposed did Sauer argue the referee’s order subsequently adopted by the court was vague and ambiguous.

*Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 305 [10 Cal.Rptr. 377] [where defendant refused to supply chemical composition of hair spray causing injury to plaintiff, trial court could enter order establishing the hair spray was injurious, but not enter default judgment precluding any defense.]) Here the court imposed an issue-preclusion sanction against Sauer for failure to produce his personal financial records. As in *Caryl Richards, supra,* this sanction put the demanding party in the position in which it would have been had that discovery been entirely favorable, i.e., the documents would have shown Sauer suffered no economic loss. In choosing this sanction, the court was attempting to tailor the sanction to the harm caused by the withheld discovery. (See *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958-959 [210 Cal.Rptr. 464].)

Sauer asserts the sanction imposed was inappropriate because he had provided extensive information about his economic loss through his deposition and that of his expert witness and through production of substantial documentation. He further asserts the additional documents requested, including his personal financial records, were merely cumulative of the information already produced and would add nothing new to Oak's defense on damages. This argument overlooks the fact Oak was entitled to documentary support to independently evaluate the accuracy of the testimony and other information provided.[9] Oak was entitled as a matter of right to demand answers to its interrogatories and to the production of documents unless Sauer stated a valid objection to them. (See *Stein* v. *Hassen* (1973) 34 Cal.App.3d 294, 302 [109 Cal.Rptr. 321].) "An important aspect of legitimate discovery from a defendant's point of view is the ascertainment, in advance of trial, of the specific components of plaintiff's case so that appropriate preparations can be made to meet them." (*Karz* v. *Karl, supra,* 137 Cal.App.3d at p. 650.) Sauer's cooperation in producing voluminous discovery materials does not excuse his failure to produce those items specifically requested by Oak and required by the court's order. "A party may disagree with a court order. He may believe it wrong-headed or a waste of time or picayunish—but he disregards it at his peril." (*Morgan* v. *Southern Cal. Rapid Transit Dist.* (1987) 192 Cal.App.3d 976, 983 [237 Cal.Rptr. 756].)

Sauer further asserts the sanction of issue-preclusion was unfair because the court improperly treated his *late* production as a willful failure to respond and conclusively presumed Oak was prejudiced. Although Sauer characterizes his dereliction as a "two week delay in responding to a limited

[9] Oak was presented with conflicting evidence regarding Sauer's postemployment income and his net worth. For example, Sauer testified at his deposition on July 1, 1986, that he had a household monthly income of $2,500. In contrast, Sauer represented on a loan application submitted in late 1985 that his monthly income was $11,391.

part of discovery," his offer to produce the requested documents was too little too late—it came after trial was scheduled to begin and only after the court imposed its issue-preclusion sanction.[10] "Belated compliance with discovery orders does not preclude the imposition of sanctions. [Citations]. Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts. [Citation.]" (*North Amer. Watch* v. *Princess Ermine Jewels* (9th Cir. 1986) 786 F.2d 1447, 1450; *United States* v. *Sumitomo Marine & Fire Ins. Co.* (9th Cir. 1980) 617 F.2d 1365, 1370.) Imposition of a lesser sanction would have allowed Sauer to benefit from his delay by forcing Oak into the unfavorable position of proceeding to trial ill-prepared to meet Sauer's $1.5 million damage claim and would encourage the very conduct for which the Legislature enacted section 2034, subdivision (b)(2)(B). Sauer's failure to produce the requested documents was not a mere technical violation of a discovery rule. (Cf. *Morgan* v. *Ransom* (1979) 95 Cal.App.3d 664 [237 Cal.Rptr. 756] [sanction of dismissal reversed where plaintiff failed to timely answer written interrogatory in proper form.]) Thus, the court was justified in finding Oak was prejudiced by Sauer's noncompliance with the discovery order.

Moreover, in addition to Oak's right to obtain the proper objects of discovery, what is at stake here is the integrity of the discovery process and the interest of the court in compelling "obedience to its judgments, orders and process." (§ 128, subd. (a)(4); see *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].) The trial court should not exercise its discretion to reward the type of brinkmanship displayed by Sauer here.

Alternatively, Sauer contends this court should direct the trial court to defer imposition of sanctions until after trial. He suggests that if, after trial, the trial court finds Oak was prejudiced by Sauer's tardy production of his personal financial records or the unavailability of his 1982 calendar, it could then disallow any award of damages for Sauer's economic loss. We presume the trial court was aware of its various options in imposing an appropriate sanction and we will not select a sanction different from that within the trial court's discretion. Where, as here, the petitioner presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion, the appellate court is neither authorized nor warranted in substituting its judgment for that of the trial court. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) Having

[10] After the court imposed the sanction, Sauer offered, in an attempt to show the requested information was insubstantial to Oak's case, to bring his personal financial records to the court the next day. Although the records were apparently lodged with the superior court on September 26, Oak claims it has never received them.

reviewed the trial court's exercise of discretion, we cannot say the relationship between the sanction selected and the conduct at issue was such that precluding evidence of Sauer's economic loss exceeds the bounds of reason. This is particularly true when electing the alternative sanction proposed would encourage the stone wall tactics the court decried here. If the material sought is truly prejudicial, the producing party is no worse off by disclosing it as late in the process as possible; if the materials are wholly innocuous, but, as here voluminous, tardy production at the least achieves the tactical advantage of sending one's opponent off on an analytical wild goose chase on the eve of trial.

Sauer further contends the court erroneously attempted to punish him for the mistakes of his attorney. However, "'. . . the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief.'" (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775], quoting *Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61].) Only the attorney's positive misconduct which effectively obliterates the existence of the attorney-client relationship will relieve the client from the consequences of his attorney's mistakes. (*Ibid.*) Here, the willfulness shown in failing to comply with the court's discovery order does not fall within the "positive misconduct" exception such that Sauer was "effectually and unknowingly deprived of representation." (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391 [38 Cal.Rptr. 693]; see also *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240].) If anything, withholding Sauer's financial records was a tactical maneuver to be attributed to both Sauer and his attorney. Because the record fails to show Sauer was abandoned by his attorney, the court's choice of an issue-preclusion sanction was entirely proper.

## Disposition

The petition is denied and the alternative writ is discharged.

Todd, J., concurred.

**WORK, J.**—I concur in the result insofar as it upholds the sanctions imposed pursuant to Referee Higgs's findings.

I dissent and would reverse the preclusion sanction on the special facts of this case where even the few documents originally not timely produced have been lodged pretrial for more than a year with the trial and appellate courts and accessible for all discovery purposes to Oak Industries, Inc. (OAK), for

that period. Although available, these so-called "critical" records have languished unexamined by Oak's attorneys, the trial court or the majority of this appellate panel, all of whom choose to rely on a conclusive presumption of prejudice for which there is no legal justification where the sought-after materials are available for examination and meaningful use at trial.

My disagreement with the majority is multibased. (1) On the facts of this case, I find the evidence-preclusion sanction to be punitive only, because a short delay of trial initially, and even now, will place Oak in the same trial preparation position it would have been had the late-produced documents been received earlier. (2) Further, I would follow case-precedent and hold the trial court abused its discretion in not modifying its sanction at the October reconsideration hearing based on the fact the final materials had been produced more than one month earlier. (3) In addition to the above concerns, I would reverse the sanction because it was imposed for Sauer's failure to comply with a nonspecific order pursuant to general references in Oak's motion to compel production, which are so vague as to deny Sauer sufficient notice to satisfy the procedural due process required to support a sanction which precludes having his case decided on the merits. (4) Next, both at the time the sanctions were imposed, and at the later reconsideration hearing, alternate sanctions were available to the trial court which would have provided full remedy to Oak for any delay in production, including expenses incurred, i.e., a trial delay and monetary sanctions. Neither Oak nor the trial court suggested either the judicial system or Oak would be prejudiced by a delay, nor that full compensatory monetary sanctions ordered would not be paid promptly. Moreover, those alternatives are still available should we remand. (5) Finally, these sanctions, if appropriate to punish misconduct (which I do not perceive in this record) cannot be justified to punish Sauer whose conduct is not even suspect. Thus, the concept alluded to by the majority, that a client must be deemed to stand in the "shoes" of his lawyer when the attorney fails to file or try an action within applicable statutes of limitation, has no application here. On those matters, the Legislature has stated a public policy barring stale filings or trials. These are matters as to which the trial court has no discretion and, in any event, the client is always in a position to monitor and/or change lawyers. There is no similar public policy declared in the discovery statutes and they have been interpreted consistently as requiring the trial court to exercise its discretion so as to not place the benefiting party in a better legal position than it would have been had discovery been timely. When the sanction punishes the client when a lawyer provides late discovery, it is not justified. In these matters, the statutes permit the lawyer to be sanctioned separately, and the sanction choice is not statutorily compelled, but discretionary.

Although the factual recitation in the majority analysis does not allow one to savor the frenetic pace of the voluminous discovery aspects to which all parties were subject once they stipulated to condense discovery efforts to the 90-day period preceding an expedited trial date obtained by Sauer over Oak's objection, the record shows it required an Olympian effort to maintain.[1] After 30 days, Sauer's attorney (a sole, albeit able, advocate who was simultaneously engaged in other litigation) realized he was losing ground. However, relief was denied when the court refused his request for a later trial although the complaint had been on file only 18 months and the parties were diligently preparing for trial. This time, Oak objected to the continuance. Unable to obtain relief from the restrictive discovery schedule, Sauer's attorney attempted to stay abreast of Oak's paper tidal wave until the unfortunate denouement described by the majority.

I

There is no need to recite the number and extent of the voluminous items of discovery requested by Oak, its efforts to obtain them, the number produced by Sauer and whether the materials were forthcoming voluntarily or only after initial sanctions were imposed, the number of depositions taken and submitted to, or to count the documents produced before the preclusion sanction was imposed. Suffice to say, the preclusion sanction is founded solely on Sauer's failure to timely produce his personal checkbooks and bank statements, items which on personal examination appear to add little evidentiary weight to the issue of whether Sauer failed to reasonably mitigate damages in this case. This is because Sauer had already provided voluminous personal *business* bank and associated records for his various postdischarge business endeavors and his real estate holdings.

Here, the record shows the trial court imposed this severe sanction only after it erroneously determined it must *conclusively presume prejudice.* However it did not even review the voluminous records already produced and the other discovery materials in Oak's possession on the very issue in question, Sauer's efforts to mitigate damages. The trial court then relied on this finding of prejudice to justify the severity of the sanction based on its unsupported conclusion there was no appropriate lesser remedy.

In any event, Oak now has had all the requested materials available to it, albeit belatedly, for a year. While it might have been prejudiced initially by the delay, and a presumption to that effect might not be unwarranted were it impossible or impractical to delay the commencement of trial, the validity

[1] For example, in addition to interrogatories and document productions, multiple depositions were contemplated to be conducted in various cities. Fifty-three were noticed and twenty-seven actually taken in San Diego, Chicago, Dallas, San Francisco and Los Angeles.

of the trial court's rationale, and that of the majority here, requires applying a conclusive presumption of prejudice even though the material was available for pretrial examination and use.[2] The trial has now been delayed 12 months and no trial date has yet been scheduled. Oak does not suggest it would have been prejudiced had there been an initial two- or three-month continuance when these late documents were produced, or that even now it would be prejudiced should the preclusion sanction be vacated. Indeed, Oak has made no effort to examine the materials it deemed so material, during the many months they have been available for inspection. Whether they are relevant or irrelevant, helpful or not to Oak, they have been available for such utilization as it desired for 12 months.

One need not disagree with the trial court's characterization of Sauer's noncompliance as willful to hold that it erred in not imposing a lesser sanction, perhaps further monetary penalties, attorney's fees and continuance of trial which would have eliminated any prejudice apparent from this record from the delay in producing the last few records. The trial court could have examined the 1982 calendar which was submitted and the other documents. I have done so and I believe the trial court, the majority of this court and Oak, would agree there is little, if anything, of value to Oak Industries on the issue of damages, had they done likewise. Even if some item contained therein is substantially material, a continuance of trial to allow Oak to explore any leads uncovered certainly would have prevented any prejudice.

II

A review of representative relevant cases supports a reversal. In *Morgan* v. *Ransom* (1979) 95 Cal.App.3d 664 [157 Cal.Rptr. 212], a court-ordered dismissal was set aside where there was no showing of prejudice to a party when the adverse litigant failed to comply with a discovery order. The court noted the dismissal was "punitive," not "remedial," and therefore was not authorized since it was only to punish the wickedness of the plaintiff's noncompliance with the court order. In *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300 [10 Cal.Rptr. 377], the court stated the purpose of the Discovery Act is to further efficient disposition of cases on their merits, not to provide a weapon for avoidance of trial through forfeiture.

So also, in *Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482 [202 Cal.Rptr. 227], the Court of Appeal set aside a sanction deeming

[2] Cases finding a conclusive presumption of prejudice are those where the untendered items are both facially material and are irrevocably unavailable. None apply a conclusive presumption where the items are only late-delivered.

attorney/client and attorney work product privileges waived as punitive and violative of the rule cited in *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300. There again the appellate court held there was no showing of prejudice sufficient to justify such an onerous sanction.

Citing *Motown Record Corp.* v. *Superior Court, supra,* 155 Cal.App.3d 482, *County of Eldorado* v. *Schneider* (1986) 183 Cal.App.3d 732, 751 [228 Cal.Rptr. 531], held that section 2034 discovery sanctions must not put the prevailing party in a better position than if discovery had been obtained. If the court believes Sauer's attorney is at fault, it may sanction the attorney by contempt, without depriving Sauer of a meaningful day in court. (Code Civ. Proc., § 2034, subd. (b)(2).)

In *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d at page 305, the superior court was faulted for a sanction order "designed not to accomplish the purposes of discovery but designed to punish petitioner for its failure to disclose in detail its secret process."

In *Puritan Ins. Co.* v. *Superior Court* (1985) 171 Cal.App.3d 877 [217 Cal.Rptr. 602], the Court of Appeal addressed the imposition of an issue preclusion sanction. There, plaintiff's expert lost a conveyer belt drive shaft which had failed five months after being repaired by defendant corporation. When plaintiff sued the repairer, the inadvertent loss absolutely precluded defendant's experts from examining the shaft to defend against the claim of negligent repair. To prevent a permanent "shafting" of the repairing corporation from its inability to examine the court ruled plaintiff could not present its own expert to testify as to the results of his earlier examination of the shaft. *Puritan* applied the general rule that "where a motion to compel had previously been granted, the sanctions should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause." Because the loss of the shaft prevented defendant's expert from examining that item, it both prevented meaningful cross-examination of plaintiff's expert who had previously conducted such an examination and eliminated the possibility defendant could develop evidence in his defense by having its own expert examine the allegedly faulty material. Thus, the sanction of excluding the plaintiff's expert testimony gleaned from examining the shaft served the remedial purpose of preventing plaintiff from achieving a tactical advantage to the prejudice of defendant. On the other hand, *Puritan* held the additionally imposed sanction preventing plaintiff from introducing photographs taken of the shaft and expert testimony based upon examining the photographs was improper. The court reasoned that if the photographs accurately depicted the material, they were accessible to defendant and available for examination by defendant's own

experts. By excluding the photographs and all interpretive testimony, the trial court's sanction placed the repairing corporation in a better position than it would have been had the failed shaft been produced.

III

The majority denigrates Sauer's lodging his personal bank records after the preclusion sanction had been imposed,[3] as a mere ploy "to protect the record for purposes of taking this writ." However, the notice of lodging filed in superior court on September 26, 1986, states: "TO: DEFENDANT AND ITS ATTORNEY OF RECORD [¶]NOTICE IS HEREBY GIVEN that the following exhibits have been lodged with Department 30 of the Superior Court (honorable Douglas R. Woodworth) and are available for inspection by the court and all counsel: [¶]*exhibit 4*: The financial documents produced by plaintiff on September 3, 1986 at the hearing on defendant's motions *in limine* and referred to by plaintiff's counsel in the offer of proof. They consist primarily of plaintiff's personal financial and banking records relative to his business ventures.

"*Exhibit 5*: The additional financial documents which plaintiff *offered on September 3, 1986 to produce within 24 hours.*[4] They consist primarily of plaintiff's personal financial and banking records that relate to his personal finances rather than his personal business ventures.

"*Exhibit 6*: A calendar which was discovered by Robert Rothman, plaintiff's counsel, on September 18, 1986 . . . which may be the calendar to which defendant's counsel refers. It should be noted that plaintiff is unable to confirm whether or not this is the calendar to which he referred in his deposition testimony of May 15, 1985." (Italics added.)

Thus, it is apparent both Oak and the superior court were notified of the lodging and urged to inspect these documents more than a month before the October 29 reconsideration hearing. At calendar argument, Oak's counsel conceded they have deliberately chosen to ignore the documents.[5]

At a reconsideration hearing on October 29, 1986, the court was again asked to inspect the documents lodged with it a month earlier. This request

[3] Actually, some of these were tendered at the hearing when the sanction was imposed and, in any event all were lodged more than a month before the reconsideration hearing.

[4] The failure to lodge these items within 24 hours of the offer is irrelevant given the fact the "offer" was rejected by the imposition of sanctions. Only had the sanction been conditioned on Sauer's not making good on the offer would that fact be meaningful on this petition.

[5] The majority suggests that late disclosure might not be prejudicial if the materials were wholly innocuous and not voluminous. A perusal of the documents in question shows they met both criteria.

was consistent with the court's statement at the time it issued its sanction order that Sauer's attorney should have an opportunity on reconsideration to show the missing evidence was totally insubstantial or, even though it might be favorable to Oak, that it could not materially affect the outcome. However, by October 29, the court had apparently changed its position. This time the court stated the issue of prejudice to Oak, by virtue of non-compliance with its discovery orders, begged the question entirely. The court bottomed its denial on a *conclusive presumption of prejudice because the material was not made available to Oak in compliance with the "four-corners" of the earlier discovery order*. Thus the court and Oak were given the opportunity to review the documents for prejudice as the court earlier indicated it would do and, although the documents were in the possession of the court, they did not do so, relying on a conclusive presumption of prejudice to bar Sauer from proving economic losses from the discharge.

Assuming the willfulness and egregiousness of Sauer's conduct (or that of his attorney, or both), there is no reason to apply a conclusive presumption of prejudice in a case where the requested materials are available for inspection and, by altering the trial schedule, can be fully utilized by defendant. There is even less reason to refuse to lift the preclusion sanction once the materials are produced in time for use at trial, even if those belatedly received items are critical (as they do not appear to be here) to the defendant. This issue was fully addressed in *Fred Howland Co.* v. *Superior Court* (1966) 244 Cal.App.2d 605 [53 Cal.Rptr. 341], where a superior court order denying the reconsideration and setting aside of a sanction was held to be an abuse of discretion. There, a notice of motion for reconsideration was accompanied by what appeared to be complete answers to interrogatories, the failure to answer which had been the basis for the earlier sanction. *Howland* cites *Caryl Richards'* statement that one principal purpose of the Discovery Act is to enable a party to obtain evidence to further the efficient economical disposition of cases according to right and justice *on the merits,* not to provide a weapon to punish, to allow forfeiture or to avoid a trial on merits. (P. 610.) In *Howland,* a writ of mandate issued even though the court acknowledged the superior court properly found a lack of diligence which could be deemed "willful" in the sense the party understood its obligation, had the ability to comply and had failed to do so. It held the superior court had abused its discretion because the wrong done, at most, only delayed preparation of the case and caused additional legal efforts for which a monetary award would readily compensate the benefited party. That is precisely the situation here. In a similar vein, the court in *Puritan Ins. Co.* v. *Superior Court, supra,* 171 Cal.App.3d at page 885, stated that it assumed the superior court would withdraw its preclusion order were the shaft later produced.

We have been cited to no California case where the lifting of preclusion sanctions has been denied where the materials have been produced before trial and there is no showing of actual prejudice and no actual fraud on the court. In the absence of those factors here and no suggestion by Oak the documents available to it for the last 12 months are not sufficient to permit it to properly prepare to defend on the still-to-be-scheduled trial date of this action, the reasoning of *Howland* is compelling.[6]

IV

Moreover, the trial court was not trying to punish Sauer by the preclusion order. Its comments plainly show its concern was to remedy what it perceived to be the effect of the conclusive presumption of prejudice. However, it did not evaluate the mass of business and personal bank records already received by Oak to determine whether the degree of prejudice reasonably to be conclusively presumed by lack of access to the minimally material personal documents at issue, required this onerous sanction. Although it is clear the trial court only intended to impose a sanction tailored to prevent Sauer from achieving an advantage over Oak by virtue of its nonreceipt of documents according to the standards stated in the California decisions, on the present facts its sanction serves no remedial purpose and fulfills only an unintended punitive role.

Contrary to any perception that Sauer retains a meaningful opportunity at trial to litigate and recover damages for his emotional distress and punitive damages, Oak's statement to the trial court shows it believes the order barring evidence of Sauer's economic loss guts the damage claim for emotional distress, as well as his claim for pure economic loss of income. Further, there is always a tacit, if not required, proportional relationship between punitive damages and compensatory.

In arguing against reconsideration of the court's preclusion sanction, Oak told the court that evidence of Sauer's personal checkbooks and bank records are probative of his postdischarge income, an issue it characterized as central to Sauer's claim of emotional distress as well as to mitigation of damages. However, the court never intended to preclude the emotional distress claim and did not believe its order had that effect, generally stating Sauer would still be able to proceed on the trial of pain suffering and humiliation, i.e., emotional distress. On this record, Oak's perception of the

[6] Although the federal decisions permit discovery sanctions to be used to punish, contrary to the California precedent, it is noteworthy that in *North Amer. Watch* v. *Princess Ermine Jewels* (9th Cir. 1986) 786 F.2d 1447, 1451, relied on by the majority, the court found a party's fraud on the court by lying about whether it had the ability to produce documents and a finding of *actual* prejudice justified dismissal.

greater effect of the imposed sanction is undeniably the more accurate. Sauer's inability to introduce evidence his income was reduced and that he suffered other related economic loss by virtue of the firing, completely negates the likelihood a lay juror will find evidence to support any meaningful award for emotional distress. In a practical world, persons are conditioned by the rigors of daily life to understand and empathize with damage claims based on proved economic deprivations causing loss of income, loss of assets, fear of poverty and the like. Thus, it seems clear that a result the trial court did not intend is precisely the goal which Oak pursues and will achieve by the preclusion sanction.

V

Aside from the punitive nature of this sanction on a record where the evidence conclusively shows there is no evidentiary prejudice at all, there is a further reason why the sanction was improperly imposed.

California Rules of Court,[7] rule 335, requires a motion to compel further production of documents be accompanied by a separate statement "which sets forth each . . . request . . . as to which further answer is requested . . . and the factual and legal reasons for compelling it. Material shall not be incorporated by reference." To the extent Oak's motion to compel generally refers (and thus incorporates by reference) to Oak's entire first and second request for production of documents, each containing multiple multisegmented demands and asking they be blanketedly complied with *to the extent the documents have not already been produced,* the motion and the order merely reiterating that general language fail to comply with rule 335. Those general references become all the more meaningless in light of the specific requests in Oak's accompanying separate statement.

Oak's separate statement to identify documents pursuant to rule 335 never specifically identified the documents involved in the sanction at issue. Even the majority must bootstrap by referring to the referee's order of August 18 requiring Sauer to produce documents responsive to Oak's formal document request (including request number 18 of its second request, relating to Sauer's personal financial records).[8] However, neither the motion to compel nor its accompanying specifications identify Sauer's personal checkbook and bank statements as a subject of this motion. The separate statement included the nonspecific request for an order that Sauer "produce

[7] All rule references are to the California Rules of Court unless otherwise specified.

[8] That the majority is forced to trek through the entire first and second request to find possible references to unidentified documents which may not have been produced, shows the importance of a separate statement particularly identifying requested items. One should not need to be a cryptographer to avoid imposition of sanctions such as this.

documents responsive to [Oak's] First and Second Request for Production to the extent those documents had not already been produced." In addition to this general request, Oak asked the court to order numerous specific documents be produced, including eight requests specifically relating to item number 18 of its second request for production. Each of these eight series of documents is cited as relevant to the issue of mitigation of damages, the same issue to which it now contends the late-produced documents relate. Those specified are identified as (1) Sauer's American Express card receipts, (2) a file of certain personal receipts, files on properties owned other than "spec" home properties, (3) records of IRA accounts, (4) RB Electronics checkbook, (5) Sauer's applications for property development in New Jersey, (6) sale documents on Crystal Lake property, (7) 1985 and, (8) 1986 documents regarding RB Electronics. All these designated items were produced. One would have to be clairvoyant to believe the court order issued in response to the motion to compel was directed to any other item potentially included in Oak's request number 18 in light of the eight separate specifications set forth in the mandatory separate statement. A motion to compel framed in such general terms as "production to the extent those documents have not already been produced" does not comply with rule 335, nor does it satisfy the procedural due process required to permit sanctions for a disobedience to an order after a motion to compel.

Contrary to the majority's statement, there is no significance to item 15 listed in the separate statement, which in turn refers to request number 13 in the second request for production of documents. This reference is, in turn, based on the reference to Sauer's deposition where he testified as to documents he describes as "personal bank accounts, cancelled checks and loan documents kept in his inside 'bank file.'" (Maj. opn. fn. 3.) Those references are to Sauer's deposition pages 522, 525 and 1030, no part of which refers to the type of personal bank records at issue in the present sanction. All references are to records produced before the sanction was imposed.[9]

[9]On page 522, Sauer responded to questioning regarding the contents of a file cabinet which he searched for "responsive documents." He stated it contained his newspaper clipping file, two folders relating to the construction of the two spec homes and some normal files he keeps there relating to bank accounts and cancelled checks. He identified these as files containing personal receipts and concerning property he owns, including the Crystal Lake property and Aurora land in New Jersey. These are precisely the type of bank accounts and bank and financial records relating to income and business properties which were produced and are not the documents which later became the subject of the motion for sanctions. Specifically, they included the RB Electronics checkbook which was turned over. Pages 1029 and 1030 relate to RB Electronics, late notices on certain real property payments, some real estate contract documents, etc. Thus, following these references to Sauer's deposition show the separate statement request related to second request number 13 as limited to financial materials which were produced and not those in issue at the time of the sanctions.

The majority expresses disbelief at Sauer's attorney's statement at the time the preclusion sanction was imposed he was not aware until the preceding day that his "personal financial records" were the subject of the order to compel. This, of course, takes the matter out of context. In this case, Sauer's personal bank accounts and financial records were many and varied. Primarily, they consisted of separate bank accounts and sets of financial records devoted to various businesses or income-producing activities including his partnership activity in RB Electronics, a separate account for certain houses being built on speculation, another separate account and set of documents relating to income-producing property in New Jersey, statements relating to raw land real estate holdings and personal documentation of his IRA accounts. Each of these items had been identified in correspondence and to some extent in requests for answers to interrogatories and for production of documents. These were always referred to in relation to their relevance to Sauer's attempts to mitigate damages. Nowhere is there any specific request for records of Sauer's nonbusiness personal bank accounts. It is these accounts which were not produced before the hearing on the motion to compel. It is these nonbusiness personal accounts to which Sauer's attorney refers.

The majority then states: "Sauer's assertion he believed the order compelled production of his *business* financial records is unpersuasive. Because Sauer had already produced these documents, it is illogical to assume Oak would continue to insist on their production or bring a motion to compel." (Maj. opn., p. 227.)This misconstrues the record. In fact, although the majority refers to the already produced documents as *business* records, they are in fact Sauer's *personal* business accounts. Further, these had not all been turned over to Oak at the time the motion and order on the motion was made, but some were produced later. It is not illogical to assume the "personal" accounts requested by Oak consisted solely of those accounts which had been identified through various discovery techniques as involving *income-producing activities* in which Sauer was involved: those specifically referred to on several occasions by Oak and which were directly relevant to show whether Sauer had made good faith efforts to mitigate damages. When the motion for sanctions was made, only other personal checkbooks and bank statements had not yet been made available, along with the 1982 personal calendar which had not been found in spite of good faith efforts, a representation accepted by the trial court, and the handwritten notes made by Sauer when he reviewed his testimony in front of the SEC. (The SEC notes were made available and Oak does not claim prejudice from the delay in getting them.)

Thus, the sanction was based upon the failure to submit personal checkbooks and bank statements not specifically identified by, and which can

only be engrafted into, the order on motion to compel by violating the policy and language of rule 335.

VI

It is understandable a court may wish to set an example when an attorney is perceived as abusing the discovery process, both to punish and to set an example which might deter others from a similar course. Code of Civil Procedure section 2034 permits the sanction of contempt in such cases. Certainly, five days in durance vile, where appropriate, seems sufficient to assuage judicial pique as well as to send a strong message to the bar. However, the California courts, unlike those in the federal system relied on by the majority here, are not to be used primarily to punish misconduct.

An analysis of applicable California law is contained in 21 Santa Clara L.Rev. 567 (1981). In an article entitled *Curbing Discovery Abuse: Sanctions Under the Federal Rules of Civil Procedure and the California Code of Civil Procedure,* Richard W. Sherwood compares the federal discovery statutes, primarily Federal Rules of Court, rule 37 with the discovery statutes of California, primarily set forth in Code of Civil Procedure section 2030 et seq., and in particular section 2034 relating to sanctions. He states California courts traditionally restrict sanctions to those tailored to remedy a failure to achieve discovery, not for punishment. (*Id.* at pp. 604-605.) On the other hand, the federal courts consistently permit sanctions designed to punish and deter. (For instance, see *National Hockey League* v. *Met. Hockey Club* (1976) 427 U.S. 639 [49 L.Ed.2d 747, 96 S.Ct. 2778].)[10]

Even were Sauer's conduct deliberate and unreasonable (a conclusion I do not find supported by this record), the preclusion sanction places Oak in a better position than if it had timely received the belatedly produced documents and proceeded to trial bolstered by whatever evidentiary gains to be winnowed from their contents. While these final few documents are admittedly relevant to Oak's pretrial discovery, they appear to be of little or no materiality to its defense of this case. If they are indeed material, Oak has had an entire year to inspect, decipher, analyze and digest their contents, and to pursue any unexplained leads revealed. That is four times the

[10]The role of the court in this context has not changed under the new discovery rules effective July 1, 1987, Code of Civil Procedure sections 2016-2036. (See the special supplement to Cal. Civil Discovery Practice (Cont. Ed. Bar Dec. 1986), entitled A Guide to the New Civil Discovery Act: All You Need to Know and Do at p. 9, § 1.5.) The author describes the existing status as one in which California courts have sternly enjoined the use of discovery sanctions for punitive or coercive purposes. It is still the California rule that, in exercising discretion to impose sanctions for noncompliance with discovery orders, the sanction must be tailored to the dereliction and not exceed that necessary to protect the interest of the party entitled to, but denied, discovery. (*Id.* at p. 7, § 1.4.)

total timespan available to it had those items been produced at the beginning of the stipulated 90-day discovery program, and almost one year longer than if they were submitted at the end of that period. Oak's ability to use those materials at the pending trial is not hampered where they are tendered. For that reason, the preclusion sanction here is solely punitive and not tailored to place Oak in the trial position it would have been had these last few documents been produced timely.

## VII

Of equal concern is the fact the sanction here is doubly inappropriate because it punishes the client, not the attorney whose conduct the majority finds so reprehensible. Implied in the majority holding is that the client's recourse is against his lawyer. There are several problems with this approach, the first of which is that it permits reviewing courts to rationalize results akin to that in this decision. A second, and more basic, is that it shifts responsibility away from tortfeasors for a reason completely unrelated to their culpability or their efforts to make amends for their malfeasance. A third factor is the impracticality of a malpractice action where it is not statutorily compelled; increasing, not decreasing, the burden on the courts and requiring the client to commence new litigation, to retain a new lawyer and to not only prove a right to recover against the long-departed tortfeasor, but also to convince a factfinder that actionable negligence has occurred. (We can only speculate that, at least occasionally, an innocent client's remedy rights are shifted from a deep-pocket malefactor to a shallow-pocketed lawyer.) However, this case is in a more unique posture. Here, even if the client believed actionable malpractice had occurred, he is locked into the present litigation and must complete it before seeking other redress. His litigation burden is double what it would be had the sanction been the even more severe dismissal sought.

For all the above reasons, I would reverse the sanction order and remand to the trial court to permit it to impose such alternative sanctions it deems appropriate, other than issue or evidence preclusion or dismissal, and to schedule an appropriate trial date.

A petition for a rehearing was denied October 19, 1987. Work, J., was of the opinion that the petition should be granted. Petitioner's application for review by the Supreme Court was denied December 16, 1987.